**DOWNS et al. v. UNITED STATES.***

(Circuit Court of Appeals, Third Circuit. February 17, 1925.)

No. 3221.

1. **Conspiracy ⬅48—Existence of conspiracy to ask for and receive bribe for not reporting liquor found in search under warrant held for jury.**

In prosecution under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to commit offense against the United States under section 117 (Comp. St. § 10287), in asking for and receiving a bribe for not reporting liquor found on search under warrant, evidence *held* sufficient for submission of question of conspiracy to jury.

2. **Conspiracy ⬅40—Persons who were not government officers could be convicted of conspiracy with government officers to commit crime against government.**

Persons who were not government officers could be convicted, under Criminal Code, § 37 (Comp. St. § 10201), of conspiracy with officers in asking for and receiving bribe for not reporting liquor found in search under warrant to commit offense against the United States under section 117 (Comp. St. § 10287).

3. **Conspiracy ⬅43(6) — Indictment charging conspiracy to commit offense against the United States held sufficient to show official capacity in which defendants acted.**

Indictment charging conspiracy to commit offense against the United States in asking for and receiving bribe for not reporting liquor found in search under warrant, alleging in the terms of the statute (Criminal Code, § 117 [Comp. St. § 10287]), that certain of the defendants were persons "acting for and in behalf of the United States in an official capacity" as federal prohibition agents in the matter of searching certain premises for liquor under search warrant and making report of results to federal prohibition director, *held* sufficient to show the official capacity in which such defendants acted in entering into the conspiracy.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

John F. Downs, Leroy Davis, Jacob Klein, and Lewis Stack were convicted of conspiracy to commit an offense against the United States, in asking for and receiving a bribe, and they bring error. Affirmed.

Merritt Lane and John W. McGeehan, Jr., both of Newark, N. J., and George E. Cutley, of Jersey City, N. J., for plaintiffs in error.

Walter G. Winne, U. S. Atty., of Hackensack, N. J.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Downs, Davis, Klein, and

*Certiorari denied 45 S. Ct. 509, 69 L. Ed. —.

Stack were convicted on an indictment charging them with conspiring (see section 37 of the Criminal Code [Comp. St. § 10201]) to commit an offense against the United States (see section 117 of the Criminal Code [Comp. St. § 10287]) in asking for and receiving from one Urynowicz the sum of $2,500, "with intent to have the decision and action of the said Le Roy Davis and John F. Downs, influenced in a question, matter and proceeding which was at that time brought before them in their official capacity, to wit, the due and legal serving of a search warrant for the premises of the said Konstantz Urynowicz, * * * and the seizing, detaining and retaining of intoxicating liquors found unlawfully possessed upon the said premises, and the making of true and correct return to the said search warrant of all intoxicating liquors * * * found on the said premises, and the reporting upon their actions in the premises, to the federal prohibition director of the state of New Jersey, and the making of complaint and prosecution of the said Konstantz Urynowicz for the unlawful possession of such intoxicating liquors, they, the said John F. Downs and Le Roy Davis, each being then and there persons acting for and on behalf of the United States in an official capacity, to wit, as federal prohibition agents, under and by virtue of the authority of the Department of the Treasury of the United States, and particularly under and by virtue of the authority of the Commissioner of Internal Revenue of the government of the United States."

In addition to the above charges contained in the indictment, there were set forth with particularity overt acts which, in substance, stated that in order to effect the conspiracy charged the four defendants went to the premises of Urynowicz, where Davis and Downs showed him their legal search warrant; that they discovered on his premises a large quantity of unlawfully possessed intoxicating liquor of more than one-half of 1 per cent. alcohol and fit for beverage purposes; that they corruptly demanded and received from Urynowicz $2,500, with the promise and understanding made to him by all the defendants, that the search warrant would be returned by Davis and Downs with the statement that no intoxicating liquors had been found on his premises, and the liquors found would not be seized by Davis and Downs; that Davis and Downs would not report to the federal prohibition director of New Jersey the finding of such liquor, and would not complain

against or prosecute Urynowicz for the unlawful possession of the same.

Motions to quash were overruled, and pleas entered, and on trial all the defendants were found guilty and thereafter sentenced to penitentiary imprisonment and fines. The several defendants have sued out a writ of error to this court.

An examination of the proofs shows the matters charged and the allegations made substantially as follows:

After the occurrence, Urynowicz confessed to the entire transaction—his bribery of the officers, and his payment of the $2,500, in the presence and at the instance of all four, to one of their number. Coming to the actual payment of the money, his testimony was:

"Q. Then, what did you do after that? A. Then I offered him $700.

"Q. Who did you offer that $700 to? A. Right to them four.

"Q. All four? A. Yes.

"Q. What was said about that? A. They refused to take it, and I put up $1,400; they refused to take it; they wanted $3,000.

"Q. Who said anything about $3,000? A. The whole four.

"Q. They talked among themselves and to you? A. Yes.

"Q. Well, they did not take the money you offered them; is that right? A. What?

"Q. They did not take the money you offered them? A. They did not take the $1,400.

"Q. Don't tell us anything about where you went to; but what did you do after that? A. Then I got some more money, and I gave them $2,500 right where the liquor was on a wine barrel, I counted $2,500.

"Q. And who took it? A. Mr. Klein.
* * *

"Q. At the time you counted out this money, Urynowicz, was anything said about what that was for? A. They told me, he said, to move that liquor, so that there won't be anything, because somebody else come down and get you, said.

"Q. Who said that? A. Mr. Davis.

"Q. Who was present when Davis said that to you? A. All four of them. * * *

"Q. You don't know what they did with it? What were they to do for you? A. They said they would not bother me no more."

There was additional testimony which, among other things, proved there were 50 cases of whisky on the premises, the presence of all four men, talk with Davis by an outsider about how much money they were

asking from Urynowicz, and the official federal position of Davis and Downs. On the part of the defendants, Davis and Downs testified they were federal officials intrusted with the service of the warrant, and that they found no liquors on the premises, that Klein and Stack were not there, and that they did not know them. The latter testified they were not there the day of the search, and all four men denied having received the money testified to by Urynowicz.

The principal questions raised by the several defendants are: First, that there was no evidence of a conspiracy; second, there was a misjoinder of the defendants; and, third, the indictment was insufficient.

[1] As to the first ground, we are clear from the testimony that there was proof of a conspiracy. The evidence tended to show that, the day before the raid, Urynowicz had received on his premises 50 cases of whisky, for which he was to pay $4,000. Evidently, from some information Davis and Downs had, they were led to obtain a search warrant of Urynowicz's premises and to have a truck sent there to carry away this liquor. The subsequent events tended to show that the defendants Klein and Stack, and Davis, came to Urynowicz's saloon together, and Davis produced the search warrant, went behind the bar, and took a bottle of Scotch whisky, and then he and Klein went upstairs, found the whisky there, and subsequently called the truck. Meanwhile Stack had remained downstairs to watch the liquor. Urynowicz meanwhile said to Stack: "You got evidence of me, why don't you arrest me?" To which Stack replied: "We don't want to arrest you." Urynowicz then offered Stack $400, to which Stack replied that Davis was the boss. They then went upstairs, where Davis, Downs, Stack, and Klein had the talk detailed at length in the earlier part of this opinion. The fact of a conspiracy, the participation of all parties in it, and the leadership of Klein, and the use by him and Stack of the government officers as their tools to carry it out, are all quite clear. Stack remained alone with Urynowicz to lay the ground for extorting from him the money and using Davis as the means. When they got together, Davis phoned for the truck to take away the liquor which Urynowicz wanted to save, and the money was paid over to Klein in the presence of all four, and then Davis told Urynowicz to move the liquor because some one else might come and get it. In point of fact, Urynowicz stopped payment of his check of $4,000 he had given for the whisky,

and the men who had sold it took it away the same day.

Taking the testimony as a whole, it is quite clear that Klein and Stack were the leading spirits and the government officers the willing tools in the conspiracy, or, as said in another conspiracy case decided at this term: "The persons in one group agreed with those in another group, and all conspired to commit the offense forbidden." We are of opinion, as we have said above, the proofs were such as to require the court to submit the question of conspiracy to the jury.

[2] Nor is the fact that Klein and Stack, who were not government officers, and could not themselves have been convicted of the crime committed by Davis and Downs, who were government officers, one which prevents them from being convicted of joining in a conspiracy to have the latter commit such crime. In that regard we agree with the principle set forth in Johnson v. United States, 158 F. 69, 85 C. C. A. 399, where it was said:

"A defendant, therefore, may be convicted of a conspiracy to commit an offense when, in the nature of things, he could not have committed the offense himself, if it be an offense which one of his co-conspirators could commit."

[3] It remains to consider the sufficiency of the indictment. Section 117 of the Criminal Code, which the conspiracy intended Davis and Downs should violate, applies to "a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government thereof." The indictment avers and informed the defendants that Downs and Davis were "then and there persons acting for and on behalf of the United States in an official capacity, to wit, as federal prohibition agents under and by virtue of the authority of the Department of the Treasury of the United States, and particularly under and by virtue of the authority of the Commissioner of Internal Revenue of the Government of the United States." It further averred and informed the defendants of the specific duty in which Downs and Davis were to be corruptly influenced by the conspiracy "in a question, matter, and proceeding which was at that time brought before them in their official capacity," and that was "the due and legal serving of a search warrant for the premises of the said Konstantz Urynowicz at 651 Henderson street, in the said city of Jersey City, for intoxicating liquors containing one-half of 1 per cent. or more of alcohol by volume, and being fit for use for beverage purposes, and the seizing, detaining, and retaining of intoxicating liquors found unlawfully possessed upon the said premises, and the making of true and correct return to the said search warrant of all intoxicating liquors containing one-half of 1 per cent. or more of alcohol by volume, and being fit for use for beverage purposes so found on the said premises, and the reporting upon their actions in the premises, to the federal prohibition director of the state of New Jersey, and the complaining against and the making of complaint and prosecution of the said Konstantz Urynowicz for the unlawful possession of such intoxicating liquors."

It will thus appear that the indictment, not only charged in the specific terms of the statute, but also specified definitely and informatively the acts which, in this case, showed the violation thereof by those indicted. The defendants, therefore, went to trial fully informed of, and definitely charged with, the particular unlawful acts for which they were indicted; they had a fair trial, and were convicted after a careful and comprehensive charge. Neither in the matter discussed above, nor in the others complained of, all of which have had our careful consideration, do we find error by the trial court.

Its judgments and sentences are therefore affirmed, and the record will now be remanded for further procedure in due course.