**DANIELS et al. v. UNITED STATES.***

(Circuit Court of Appeals, Ninth Circuit. January 31, 1927. Petitions for Rehearing Denied February 21, 1927, and March 7, 1927.)

No. 4828.

1. Bribery ⬥11—Evidence held to show that prohibition officer was acting in official capacity, and bribe was to induce violation of duty as against defense of extortion (Criminal Code, § 39 [Comp. St. § 10203]).

In proecution, under Criminal Code, § 39 (Comp. St. § 10203), for bribery of prohibition officer, evidence showing that bribe was offered to induce officer to forego further investigation of withdrawals of bonded liquor and to permit further withdrawals, *held* to show that officer was acting in his official capacity, and that bribe was to induce violation of lawful duty as against contention that money was extorted for the doing of a lawful act.

2. Extortion ⬥1—"Extortion" is obtaining of anything by illegal compulsion, and implies unwilling payment.

"Extortion" is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction, and it implies that money paid was extorted on the part of one who received it and unwillingly paid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Extort —Extortion.]

3. Bribery ⬥1(1)—Officer's conduct need not be prescribed by statute to constitute official action.

For an officer's conduct to constitute official action, it is not necessary that it be prescribed by statute, but sufficient if it is governed by a lawful requirement of the department under whose authority the officer is acting.

4. Bribery ⬥1(1)—As affecting offense of attempted bribery, propriety of official action sought to be enforced is immaterial.

As affecting offense of attempted bribery, it is immaterial whether the official action sought to be enforced be right or wrong.

5. Criminal law ⬥576(8)—Delay in trial on bribery charge held not in violation of constitutional guarantee of speedy trial (Const. Amend. 6).

Trial in October, 1925, of indictment for bribery of prohibition officer returned in November, 1920, *held* not in violation of Const. Amend. 6, guaranteeing speedy trial; defendant having made no objection before trial, nor any effort to expedite hearing.

6. Mandamus ⬥61—Mandamus is appropriate remedy of accused to compel trial without unwarranted delay.

In the absence of statute, the only remedy of an accused failing in his efforts to bring case on for trial is to apply to an appellate court for mandamus.

7. Criminal law ⬥576(5)—Defendant acquiescing in postponement cannot complain of denial of speedy trial (Const. Amend. 6).

A defendant may not acquiesce in the postponement of his trial from time to time, and

then insist on dismissal because he has been denied a speedy trial guaranteed by Const. Amend. 6.

8. Criminal law ⬥829(1)—Denial of requested charges, covered by charge given, is not error.

Denial of request for instruction which was substantially covered by charge as given is not error.

9. Internal revenue ⬥41—Officer, credibly informed that owner withdrawing liquor intends to apply it to unlawful beverage use, has duty to prevent withdrawal until investigation is had.

Collector of internal revenue, receiving credible information, or believing on reasonable ground that owner of intoxicating liquor applying for withdrawal permit intends in so withdrawing the liquor to apply it to beverage uses, has the affirmative duty to reject payment of tax and prevent withdrawal until an investigation can be had.

10. Criminal law ⬥419, 420(1)—In prosecution for bribery of prohibtion officer, testimony of collector of revenue that he had unlawful withdrawals brought to his attention held not inadmissible hearsay (Criminal Code, § 39 [Comp. St. § 10203]).

In prosecution under Criminal Code, § 39 (Comp. St. § 10203), for bribery of prohibition officer investigating withdrawals of bonded liquor, it was not error to permit collector of internal revenue to testify, over objection that it was hearsay, that about the times involved it was brought to his attention that bonded liquor had been withdrawn from warehouses illicitly.

11. Criminal law ⬥1129(3)—Assignment of error in admission of testimony may be disregarded for noncompliance with court rule (Circuit Court of Appeals rule 11).

Assignment of error complaining of question propounded by witness, but failing to give full substance of evidence received, may properly be disregarded under Circuit Court of Appeals rule 11.

12. Bribery ⬥10—In prosecution for bribery of prohibition officer, supervisor's testimony held admissible to negative contention that officer had at first intended to keep bribe.

In prosecution for bribery of prohibition officer investigating withdrawals of bonded liquor, testimony of supervisor of prohibition officers as to statements by officer involved *held* admissible to negative contention of defendants that officer in first instance intended to accept bribe and conceal it from his superiors.

13. Bribery ⬥13—Evidence held sufficient to go to jury in prosecution for aiding and abetting in bribery of prohibition officer (Criminal Code, § 39 [Comp. St. § 10203]).

In prosecution under Criminal Code, § 39 (Comp. St. § 10203), for aiding, abetting, and assisting in bribery of prohibition officer, evidence *held* sufficient to go to jury, though defendant was not present when bribe was given.

**14. Bribery ☞3½—Defendant, charged with aiding and abetting in bribery, need not have been present when bribe was paid; "accessory before the fact."**

A defendant, charged with aiding and abetting in bribery of prohibition officer, need not have been present when bribe was paid; "an accessory before the fact" being one who was not ·present actually or. constructively when crime was committed, but who counseled, procured, or commanded another to commit it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accessory Before the Fact.]

**15. Indictment and information ☞83—Indictment for aiding and abetting in bribery of officer held to sufficiently allege defendant's knowledge of officer's official character (Criminal Code, § 39 [Comp. St. § 10203]).**

Indictment, ·under Criminal Code, § 39 (Comp. St. § 10203), for aiding and abetting in bribery of prohibition officer, *held* to sufficiently allege defendant's knowledge of officer's official character, in view of reference to charge against one whom defendant aided.

In Error to the District Court of the United States for the Southern Division of ·the Northern District of California; Frank H. Kerrigan,. Judge.

Charles I. Daniels and another were convicted of violating Criminal Code, § 39, and they bring error. Affirmed.

The· plaintiffs in error were convicted of violation of section 39 of the Criminal Code (Comp. St. § 10203) under an indictment in which Daniels was charged as principal, and Appell was charged with having aided, abetted, and assisted him. The substance of the indictment was that one William J. Jordan was a prohibition agent, whose duty it was to investigate and report all violations of the National Prohibition Act (Comp. St. § 10138¼ et seq.), and to investigate and ascertain whether or not persons who were engaged in the business of wholesale dealers in liquor for nonbeverage purposes, and to whom permits had been legally issued under section 3, title 2, of the National Prohibition Act, were complying with the provisions of that act; that on August 31, 1921, the Great Western Products Company, a corporation, Sol E. Levis, and William M. Dean were permittees, holding individual permits authorizing each of them to purchase, sell, export, and import intoxicating liquors in wholesale quantities for nonbeverage purposes; that on September 1, 1920, said corporation, as a permittee, attempted to secure the possession of 25· barrels of intoxicating liquor from a certain described bonded warehouse, and on September 24, 1920, said Dean and Levis each as permittee sought to secure possession of 41

and 42 barrels of intoxicating liquors respectively, from bonded warehouses and places described; that on or about September 24, 1920, Jordan, as prohibition agent, had under investigation all of said applications for the attempted withdrawal of intoxicating liquor; and that, while his investigation was being made for the purpose of determining the question of the right of said applicants as permittees to receive such liquors, on October 1, 1920, at a designated place the defendant Daniels gave to said prohibition agent a bribe, to wit, the sum of $8,100, in an unlawful attempt to corruptly influence him as such prohibition agent in his action in said investigation, and with the corrupt intent to induce him to cease and omit all further investigation, and to permit and allow said three applications for the withdrawal of intoxicating liquors from said warehouses without completing said investigation, and without making a report thereon, and thus afford. opportunity for the said applicants to commit a fraud upon the United States by such withdrawals of liquor to be disposed of by them and each of them in violation of said National Prohibition Act. The indictment charged also that the defendant Appell did unlawfully aid and assist and abet said Daniels to corruptly and unlawfully bribe said prohibition agent for the purposes set forth in the indictment.

Daniels was a director of the Great Western Products Corporation. Jordan testified that Daniels came to him and said, "I understand there is going to be an investigation of all previous withdrawals of liquor. I have a permit in there for 25 barrels. I went down to pay the tax on it, and I found that you, through the instructions of Wardell, were holding up the withdrawal of that 25 barrels." Jordan testified, "I told him that was the truth. He. says, 'You know, I have previously withdrawn 29 barrels of whisky. Do you intend to investigate that?'. I told him that I did. He asked me would I investigate his withdrawal first. I told him I would. He says, 'When will you come up?' I says, 'I will go up that afternoon.' I went up to his place of business, and he showed me a permit, a 1410, showing me that he sold the 29 barrels of whisky which he had withdrawn previously to a man named Dean. * .* * I asked· him for his carrier's copy. He said he hauled the whisky himself to Dean's place. I asked him had he a truck, and he said, 'No, we hauled it in our·little Ford truck.' I said, 'You can get about three barrels in that Ford; , that would necessitate about nine or ten trips to Twenty-Seventh avenue'; and· he said;

'Yes, we hauled it that way.' He asked me what I intended to do, and I told him I was going out and investigate Mr. Dean, to find out what disposition Mr. Dean had made of this liquor. * * * That evening Mr. Daniels called at my house. * * * I had a conversation there with Daniels. Daniels said to me, 'After you left to-night, I got thinking it over, and, if you proceed along the lines that you are proceeding, there will be no more withdrawal of liquor from bonded warehouses.' He said, 'I went over to the Palace Hotel after you left, and I had a talk with Brolaski, and Brolaski told me he would raise the ante from $15 to $17.50 a gallon, and, in view of the death of Handley, that your bit will be $5 a gallon. Will you accept that proposition?' * * * I told him that would run into something like $60,000 or $70,000, and did he intend to give me that amount of money? He said, 'Yes.' I said if I had that amount of money I would go crazy. He said to me, 'I will give it to one of your sisters in case of there is a jam, and there is an investigation you will not have the money'. I told him, I said, 'I think you had better let me sleep on that, and I will let you know in the morning.' He left, and he returned in about 15 minutes, and he said, 'I met Mr. Appell at the foot of the hill, and I told Mr. Appell the proposition that I made to you, and Mr. Appell told me that I made a mistake.' * * * That he should have only offered me $2.50 a gallon, in view of the fact that Brolaski raised the ante from $15 to $17.50 a gallon, and asked me would I accept the $2.50 a gallon. I told him, 'As I told you before, you let me sleep on it, and I will let you know to-morrow.' The next day I went to the custom house, reported to the custom house, and, together with Mr. Rutter and Mr. Wardell, we had a conference, and I explained Daniels' visit to my house on the previous night, and asked them what action they wished to take."

The witness further testified that he had met Daniels that afternoon at his place of business. "I told him, I said to him, 'Charley, you will admit that Brolaski sent you to me.' He said, 'Yes.' Then I said, 'You are only acting as an errand boy for Brolaski.' He said, 'Yes.' I said, 'You take me to the Palace Hotel and introduce me to Brolaski, and I will go through with this scheme.' He says to me, 'Brolaski will have nothing to do with you. Brolaski is ascared of you.' Then I said, 'We will call the deal off.' He said to me, 'Don't act too hasty. Will you visit my attorney?' I asked him who that was, and

he said Mr. Appell. I said, 'Is that the gentleman who was out at my house last night?' He said, 'Yes.' I said, 'All right, I will go up with you.' We got in the machine, and drove to the Phelan Building. I don't know what floor his office is on. He went into Appell's office, and left me standing in the hall. He was in there possibly two or three minutes, and I was ushered into the private office. I was introduced to Mr. Appell, and Mr. Appell said he knew me by sight. He said, 'Jordan, I understand from Charley you will have nothing to do with this scheme unless you are introduced to Brolaski.' I said, 'That is right.' * * * We talked it over for a few minutes, and finally Mr. Appell said to me, 'Jordan, you go through with this one deal, and you and Mr. Brolaski will become very well acquainted.' I thought so too. So he said to me, 'How are you fixed financially?' I told him I had nothing more than the law allowed. He turned around to Daniels, and said, 'Charley, there is $10,000 in your safe. It has been lying there for a week or two, waiting for an occasion like this. Give Jordan that $10,000.' I told him, 'no,' I would not take it then, because I had no place to put it. I said, 'You had better wait until such time as I have a safe deposit box, or something like that.' Mr. Appell thought that was a very good suggestion. I left them there, and returned to the post office building, to the United States attorney's office, where Mr. Rutter and Mr Dinges were waiting for me." Jordan testified that in the evening of that day he returned to Daniel's place of business, and that Daniels said, "Bill, at $2.50 a gallon you are going to make an awful lot of money." "And he says, 'Will you accept $1 a gallon?' I told him, 'All right,' I would accept the $1 a gallon. He said, 'Here is a list of gages I want you to put back on the file, so that the payment of taxes can be made on them.' He asked me, he said, 'When can you—' " The witness here explained the term "list of gages," and said that, when whisky was withdrawn from bond, there is a form made out by the collector of internal revenue. It is an order on the gager at the bonded warehouse to gage that whisky. The whisky is gaged, and papers are then sent back to the collector, and are then checked to see that the figures are all right. Then the tax is paid. They are sent down to the bonded warehouse, and the stamps are put on the barrels. The tax is paid by the legal owner of the whisky. Continuing, the witness said, "He offered me the $1 a gallon, and he asked me when I would go through with it. He wanted me to

go through with it the next day. * * * I promised him I would go through with it on Friday." He testified that on Friday he reported to the custom house, and his superior officer designated two men to go with him, that he took those gages from Wardell's office and put them on file. "There were lots to Sol Levis and lots to Dean, and there was one lot to the Great Western—two lots to Dean. Those are the gages that Daniels had given me the Wednesday night previously. * * * I put them on the file, so that the tax could be paid as agreed upon." The witness testified that Daniels thereafter paid him $8,100 in currency, and that thereupon he caused the arrest of Daniels.

Bert Schlesinger and S. C. Wright, both of San Francisco, Cal., for plaintiff in error Appell.

R. P. Henshall and Robert R. Moody, both of San Francisco, Cal. (John W. Preston and Robert Duncan, both of San Francisco, Cal., of counsel), for plaintiff in error Daniels.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The defendant Daniels contends that under the terms of the indictment and the evidence adduced to sustain it Jordan was bribed only to induce him to do that which it was illegal for him to refuse to do, and that hence no offense against the United States was either charged or proved, that the validity of the permits theretofore issued to the corporation and to Levis and Dean was not open to question; that Jordan's investigation to ascertain whether the permittees were entitled to withdraw and receive the intoxicating liquors under the permits was an investigation in violation of law; that the holding up of the withdrawals was an illegal act; and that the acceptance of the money by Jordan was a crime committed by the government through its agent Jordan, and was extortion.

[2] Extortion is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction (United States v. Deaver [D. C.] 14 F. 595), and the term implies that the money paid was extorted on the part of the one who received it, and was paid unwillingly by the one who paid it (United States v. Harned [D. C.] 43 F. 376). "The distinction between bribery and extor-

tion seems to be that the former offense consists in offering a present or receiving one, the latter in demanding a fee or present by color of office," State v. Pritchard, 107 N. C. 921, 12 S. E. 50. It is clear that neither the evidence nor the indictment in the case at bar presents a charge of extortion. The defendant Daniels took the initiative, and was the active proponent of all that was done. All that Jordan did was to assent ostensibly to Daniels' offer, and receive the money. In support of his contention Daniels cites Wilson v. Bowers (D. C.) 14 F.(2d) 976, a case in which suit was brought to enjoin the collector of internal revenue from refusing to honor an application for withdrawals of specially denatured alcohol for which the complainant had received a basic permit; the complaint alleging that, so long as the permit is in force and officially unrevoked, no power exists to suspend the rights acquired thereunder pending the determination of a revocation proceeding before the department. The court granted the injunction, and held that the words of the Prohibition Act, "during the pendency of such action such permit shall be temporarily revoked," referred only to the period of review in the United States District Court given the permittee whose permit has been revoked, and that the provision was a mandatory requirement of the statute preventing any action to keep alive the permit or to stay the revocation thereof while the suit in equity was pending. But it does not follow from the ruling in that case that the indictment here falls short of charging an offense against the United States, or that the evidence was insufficient to go to the jury. For the indictment alleged that Jordan, as prohibition agent, was charged with the duty of investigating and ascertaining whether or not persons to whom permits had been issued under provisions of the National Prohibition Act were complying with those provisions and the regulations relating thereto, or had violated, or were attempting to violate, any of the provisions of the act or the regulations or their permits. Jordan was thus charged with the performance of official duties.

[3] Section 39 of the Criminal Code provides as follows: "Whoever shall promise, offer, or give * * * any money * * * to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the government thereof * * * with intent to influence his decision or action on any question, matter, cause, or proceeding which may

at any time be pending, or which may by law be brought before him in his official capacity * * * or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined * * * and imprisoned. * * * "

"To constitute it official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the department under whose authority the officer was acting." United States v. Birdsall, 233 U. S. 223, 231, 34 S. Ct. 512, 58 L. Ed. 930. In Rembrandt v. United States (C. C. A.) 281 F. 122, it was held that a prohibition agent who had seized and had control of liquors in course of transportation from one state to another under what purported to be permits issued by the prohibition director of the state to which they were going, on the ground that the permits were irregular, had such relation to the liquors so seized that a bribe given him to induce him to approve the permits was within section 39 of the Criminal Code, although he was without power to decide officially as to the legality of the seizure. Said the court: "It was practically within his power, no matter if against the law, or against the regulations, to say to the custodian: 'I have made up my mind that these permits are good enough, and you will therefore release the liquor and let the claimant take it away.' * * * This was decision and action sufficient, and this matter was sufficiently pending before him in his official capacity, to satisfy both the indictment and the statute."

In Sears v. United States (C. C. A.) 264 F. 257, it was held in the case of an indictment for bribery of inspectors placed by authority of the War Department in the plant of a contractor for the manufacture of army shoes to make preliminary inspection of material used, but without official power to reject or accept, that it does not prevent their duties from being official duties. Said the court: "Final decisions frequently, perhaps generally, rest in large part upon the honesty and efficiency of preliminary advice." There can be no question but that the court could take judicial notice of Regulation 60, enacted by the Commissioner of Internal Revenue, and other regulations promulgated for the enforcement of the National Prohibition Act. "The general system which was thereupon adopted by the Commissioner, and has now been in force and operation throughout the country for several years is universally known, and we think we should take judicial notice of it." Crinnian v. United States (C. C. A.) 1 F.(2d) 643. Of like import are Browne v. United States (C. C. A.)

290 F. 870, and Cohen v. United States (C. C. A.) 294 F. 488.

[4] It is also to be borne in mind that the contention that Daniels' act was rendered innocent by the fact that Jordan was bribed only to do that which it was his duty to do is answered by the fact that the case in hand does not involve alone a charge of bribery to induce the prohibition agent to return certain permits to the files, and this notwithstanding that Jordan testified that the money was paid solely to induce him to put back certain papers on the files. It involves also a charge of bribery to suppress investigation of permits theretofore issued and of the disposition of liquor made thereunder. It was the menace of such an investigation that induced Daniels to enter into negotiations with Jordan, and the indictment charges the intent of Daniels corruptly to induce Jordan to cease and omit all further investigation respecting said matters, and to permit the whisky to be withdrawn from the warehouses without completing said investigation and without making report thereon. It is immaterial therefore whether or not Jordan had authority to suspend permits or withdraw them from the files. He undoubtedly had authority to investigate permits theretofore issued and the disposition of the liquors obtained thereunder, and, in whatever light the transaction may be viewed, it is clear that under the indictment there was evidence to prove that money was offered and paid to induce Jordan's decision on a matter which by law was "before him in his official capacity," and to induce him to omit to do an act "in violation of his lawful duty." It is generally held that to constitute the offense of attempted bribery it is immaterial whether the official action sought to be influenced be right or wrong. "Nor is a public officer to be held acquitted of the charge of bribery because that which he agreed to accept as a bribe for doing, was no more than he was legally bound to do." 9 C. J. 405; Glover v. State, 109 Ind. 391, 10 N. E. 282; People v. Mol, 137 Mich. 692, 100 N. W. 913, 68 L. R. A. 871, 4 Ann. Cas. 960; State v. Ellis, 33 N. J. Law, 102, 97 Am. Dec. 707; Weil v. Black, 76 W. Va. 685, 86 S. E. 666; People v. Jackson, 191 N. Y. 293, 84 N. E. 65, 15 L. R. A. (N. S.) 1173, 14 Ann. Cas. 243; State v. Lehman, 182 Mo. 424, 81 S. W. 1118, 66 L. R. A. 490, 103 Am. St. Rep. 670.

[5] Error is assigned to the denial of the defendant's motion to dismiss on the ground that the prosecution was in violation of the Sixth Amendment to the Constitution, which guarantees a speedy trial to a person charged with crime. Having gone to trial without ob-

jection, the defendant was in no position to demand dismissal at the close of the government's case. A speedy trial, as provided by the Constitutional Amendment, means a trial "free from vexatious, capricious, and oppressive delays manufactured by the ministers of justice." Black's Constitutional Law, § 266.

[6, 7] No statute of the United States defines the time within which criminal accusations must be tried. In the absence of such a statute, it would seem that, if the accused fails in his efforts to bring the case on for trial, his only remedy would be to apply to an appellate court for mandamus. It has been so held. Frankel v. Woodrough (C. C. A.) 7 F.(2d) 796. It is also held that one may not acquiesce in the postponement of his trial from time to time, and then insist on dismissal because he has been denied a speedy trial. Phillips v. United States (C. C. A.) 201 F. 259; Worthington v. United States (C. C. A.) 1 F.(2d) 154, certiorari denied 266 U. S. 626, 45 S. Ct. 125, 69 L. Ed. 475. Here the indictment was returned November 12, 1920, and the trial was had October 6, 1925. A demurrer was filed on December 11, 1920, and was submitted on February 11, 1922. It is not shown that at any time between the indictment and the trial effort was made by the defendant to expedite the case or to bring it on for hearing. We find nothing contrary to these views in Beavers v. Haubert, 198 U. S. 77, 25 S. Ct. 573, 49 L. Ed. 950. The motion to dismiss was clearly without merit.

[8] We find no ground for reversal in any of the instructions to the jury given or refused. The first request was for an instruction which was substantially covered by the charge as given. The second presented the proposition already discussed herein that, when permits have been issued and liquors gaged, and nothing remains to be done except the payment of the tax, the prohibition agent has no official functions to perform in connection therewith. The third was a request that the jury be told that Jordan was not entitled to keep the $8,-100 as his own, and that, in considering his credibility as a witness, weight should be given to his efforts to secure it for himself. To that request the court replied that Jordan had no claim to the money, and that the testimony as to such a claim was relevant only as it affected his credibility.

[9] It is insisted that it was error to instruct the jury that, if, when an owner of intoxicating liquor has obtained a permit to withdraw it and has applied for withdrawal, the collector of internal revenue has received creditable information, or believes upon reasonable ground that the intention of the owner in so withdrawing the liquor is to apply it to beverage uses contrary to law, then the collector would not be obliged to accept payment of the tax or permit the withdrawal, but it would be his affirmative duty not to do so until an investigation could be had. We think the instruction properly stated the law. If the liquor was to be applied lawfully to beverage purposes, there was still to be an additional tax thereon, and, until payment of the tax, there could be no withdrawal, and, in any event, the collector would not be compelled to accept the tax or permit the withdrawal if he had reasonable ground to believe that the liquor was to be devoted to an unlawful purpose.

[10, 11] It is assigned as error that the trial court overruled the objection to the question propounded by the plaintiff to the collector of internal revenue whether in August or September, 1920, it was called to his attention that bonded liquor had been withdrawn from the warehouses illicitly, and it is argued that hearsay testimony of that nature was inadmissible, that its effect was to give to rumor a probative effect against the accused as a reason for doing an act when the rumor itself would be illegal testimony. We might properly disregard the assignment under our rule 11 for its failure to quote the full substance of the evidence received, but we find in the admission of that testimony no ground of reversal. It was admitted on the ground that it was only preliminary. It can be seen that it could have had no effect to fasten guilt upon the accused. The case is unlike Biandi v. United States (C. C. A.) 259 F. 93, cited by the defendant, where it was held that to allow a witness to state that he undertook to buy liquor from Biandi because he had been told that Biandi was selling was error, because it furnished "direct evidence" against the accused. "Admission of hearsay evidence does not constitute a ground for reversal in the absence of prejudice or injury to the defendant." 17 C. J. 332; Hawkins v. United States (C. C. A.) 293 F. 586.

[12] Error is assigned to the overruling of the defendants' objection to the question submitted to Rutter, the supervisor of prohibition officers on the Pacific Coast: "Q. Did he (Jordan) state anything further in that regard (referring to Daniels' withdrawal of 25 barrels of whisky)?" This assignment also ignores rule 11. It is only by searching the records that it can be found that the answer of the witness was that Jordan stated that Daniels had visited his house and had offered him participation in the money that was be-

ing paid by Brolaski for the release of the whisky that was going out of bond at that time; that Daniels had offered him $5 a gallon as his part or cut. The testimony was admitted on the ground that counsel for Daniels had, upon cross-examination of Jordan and by his statements in open court, endeavored to show that, at the time of the negotiations between Daniels and Jordan, the latter contemplated taking the bribe for his own use, and concealing the fact from his superiors, and that he later changed his purpose. "Our contention is," said counsel for the defendant, "that between the 21st day of September and the 29th day of September, 1921, this gentleman had an altogether different viewpoint on what he was doing." It was to negative the inference so sought to be drawn that the testimony was adduced, and the court ruled that it was admissible for the sole purpose of meeting that inference, and not for corroboration of the witness. It is to be observed also that the defendant had adduced the same evidence on the cross-examination of Jordan when he was asked, "Did you tell him that any compromising conversations had been had between you and Daniels?" and when similar questions were asked as to what Jordan told the collector and Rutter. There was no error, therefore, in admitting the testimony.

[13, 14] The contention of the defendant Appell that the evidence was insufficient to go to the jury to support the charge against him cannot be sustained. It is true that the government's case against him is predicated upon Jordan's testimony, and that Appell denied all the incriminating portions thereof, but it was for the jury to pass upon the issue so created, and it is not for this court to weigh the conflicting testimony. It is asserted that the evidence was insufficient, for the reason that Appell was not present at the time when the bribe was given. But it was not necessary that he should have been present. "An accessory before the fact is one who was not present actually or constructively at the time when a felony was committed, but who counseled, procured or commanded another to commit it, and he is equally guilty with the principal." 16 C. J. 134; Ackley v. United States (C. C. A.) 200 F. 217; Pearce v. Territory of Oklahoma (C. C. A.) 118 F. 425. The indictment charged that Appell aided and abetted and assisted Daniels to corruptly, etc., bribe said William J. Jordan" at the time and place, and in the manner and form and for the purposes hereinbefore in this indictment set out, and reference thereto is hereby and herein made the same to all in-

tents and purposes as if herein again set out in full." Jordan testified that Appell said to him, "You go through with this one deal, and you and Mr. Brolaski will become very well acquainted." The clear inference from Jordan's testimony was that Appell knew what the deal was, and that he had in contemplation the payment of a sum of money to Jordan, and for that purpose he suggested the use of the $10,000 then in Daniels' safe. If in his testimony Appell had admitted the truth of Jordan's statements, and had explained them in such a way as to show that they related to a transaction other than the attempted bribery charged in the indictment, the case against him might stand in a different light. But he denied all those statements, and the truth of the matter was thus left to the decision of the jury.

[15] It is contended that the indictment is insufficient to charge an offense against Appell, in that it contained no allegation of Jordan's official character or that Appell knew his official character. In the body of the charge against Daniels the official character of Jordan was set forth, and Daniels' knowledge thereof was alleged. So that, in charging that the defendant Appell willfully, unlawfully, knowingly, and feloniously did aid, abet, and assist the said Charles I. Daniels to corruptly, willfully, knowingly, and feloniously bribe the said William J. Jordan, etc., the indictment sufficiently charged Appell with knowledge of Jordan's official position. The charge against the accessory related back to, and adopted, the words used in the preceding charge against Daniels. Coffin v. United States, 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481; Wallace v. United States (C. C. A.) 243 F. 300, 305; Jones v. State, 58 Ark. 390, 395, 24 S. W. 1073.

We find no ground for reversal. The judgment is affirmed.