**COHEN et al. v. UNITED STATES.**

No. 10508.

Circuit Court of Appeals, Ninth Circuit.

Sept. 29, 1944.

Rehearing Denied Nov. 6, 1944.

Harry Graham Balter, of Los Angeles, Cal., for appellant Albert Charles Schnee.

Cantillon & Glover, of Los Angeles, Cal., for appellant Emanuel Max Cohen.

Charles H. Carr, U. S. Atty., and James M. Carter, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Appellants Cohen and Schnee were indicted upon two counts, to-wit, conspiring to defraud the United States and conspiring to ask a bribe. The jury found them guilty on both counts, but the court, on the ground that both counts referred to one conspiracy, sentenced each under the second count only.

Count two of the indictment charges that on or about March 6, 1943, while Cohen was the government appeal agent of the local draft board having jurisdiction under the Selective Training and Service Act of one James L. Sartor, Cohen and Schnee conspired to ask Sartor for money with the intent to influence Cohen's official action in a matter pending before Sartor's draft board, that is, the application of Sartor for a recommendation directed to the United States Army for an extension of his then existing furlough.

Sartor, while a registrant of Local Draft Board No. 199, Los Angeles, California, was duly selected for military service and, on October 14, 1942, was formally and actually inducted into the United States Army. At the time of his induction he was given a short furlough and thereafter was granted various extensions until March 8, 1943, when he was to report for active duty. The purpose of the furloughs was to enable Sartor to make some disposition of his holdings including a retail liquor store, a bar, and an equity in an apartment house. On February 11, 1943, Sartor requested an additional sixty days' deferment from active duty on the ground that he had not yet been able to settle his financial affairs. He was notified in return that a recommendation of his local selective service board would be necessary to his securing of a further extension.

Sartor consulted Cohen, who was the government appeal agent for his draft board. Cohen wrote a letter to the army officials briefly describing Sartor's property holdings and financial position and stating that Sartor requested a deferment on the basis of those facts. A friend advised Sartor that Cohen's letter did not comply with the condition set by the army and that he should speak to Cohen about obtaining a letter of recommendation from the draft board itself. Sartor asked Cohen for such a letter and was told that Cohen, himself, had no authority to make such a recommendation to the army. The evidence is conflicting as to subsequent events.

According to Cohen and Schnee, the secretary of Draft Board No. 199 inquired of the Coordinator of Selective Service whether the draft board had jurisdiction to make a recommendation with respect to Sartor and was answered in the affirmative. Cohen told Sartor that the board was to meet on Saturday, March 6, 1943. On Saturday morning Cohen consulted Schnee about an income tax problem entirely foreign to any phase of this case. During the course of the discussion Cohen, in his personal interest, asked Schnee to ascertain the condition of Sartor's liquor store and the price being asked for it. Cohen desired to purchase the business but for various reasons did not wish to publicize the fact. Schnee, using the name of Davis, had several telephone conversations with Sartor concerning the liquor store. Later Saturday morning Cohen saw Sartor, looked over the liquor store, and remarked that he was on his way to the draft board. At its meeting the draft board decided to recommend

a thirty-day extension of Sartor's furlough. Immediately thereafter, Cohen again saw Sartor and informed him of the board's recommendation.

According to Sartor, Cohen, who it must be recalled had formerly admitted his own lack of authority to make a recommendation to the army, told Sartor on Saturday morning, March 6, that one Davis would help him secure the desired extension. Davis spoke to him over the telephone and stated that a sixty-day extension would cost $2000. Later he saw Cohen again and commented upon Davis' proposition. Cohen dismissed the matter saying it was between Sartor and Davis; Cohen did not mention the action taken by the draft board. Davis telephoned again and, when Sartor suggested a price of $500, promised to see what he could do. Later in the day Davis informed Sartor by telephone that for $500 he could get only a thirty-day extension; Davis instructed him to put the money in an envelope and deliver it to the manager of a nearby theatre. (Without any question whatever the said manager was a distinterested and innocent participant in the affair.)

Sartor, accompanied by several others including one Donovan from the police department, handed an envelope containing some money to the theatre manager. (Schnee insisted it was an inventory of Sartor's business that he had asked Sartor to deliver.) After a lengthy discussion the theatre manager relinquished the Sartor envelope to police officer Donovan. With Donovan listening in, the manager telephoned Schnee, whose remarks indicated that Davis was in fact Schnee. Agents of the Federal Bureau of Investigation took charge of the matter. Finally, the conspiracy charge herein was filed against Schnee and Cohen.

In the meantime, mistakenly believing Cohen's letter was the draft board recommendation requested, army officials had granted Sartor an additional sixty-day furlough, which was subsequently cancelled before its expiration.

The indictment herein attempts to charge the crime of conspiracy, 18 U.S.C.A. § 88, to commit bribery as defined by 18 U.S.C.A. § 207. The latter section decrees that: "Whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof * * * shall ask, accept, or receive any money * * * with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined * * * and imprisoned * * *." Appellants contend that count two of the indictment fails to state an offense against the United States, even assuming the allegations therein contained to be true, because Sartor's draft board had no jurisdiction to recommend an extension of furlough for one already inducted into the army, because such a recommendation was in no way related to Cohen's duties as a government appeal agent, and therefore because Cohen was connected with the matter in no official capacity. Schnee acted in no official status with respect to the United States, and it is only because of Cohen's position that a conspiracy to commit an offense under § 207 would be possible.

We have not been able to find in the Selective Service Act, 50 U.S.C.A.Appendix, § 301 et seq., or in the regulations promulgated thereunder any provision specifically authorizing the local draft board or its appeal agent to recommend furlough extensions for one already inducted into the army; we have found nothing vesting in the board or its appeal agent any jurisdiction at all over an inductee. Unquestionably, one actually inducted is subject to military jurisdiction. Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. ——. However, with respect to a furlough extension such as that requested by Sartor it is the policy and practice of the military authorities to require a recommendation of the extension by the local draft board of the applicant. According to the testimony of an army liaison officer, to follow any other procedure would in effect "nullify the procedure of the Selective Service System in ordering a man in, so we make it a rule."

That local boards habitually have performed duties in connection with inductees is evident from various memoranda issued by the National Headquarters of the Selective Service System. Local Board Memorandum No. 80, issued January 10, 1942, discusses separation of inducted men from active military service and their transfer to the Enlisted Reserve. It reveals a duty of cooperation between civil and mili-

tary authorities: "After a man has been inducted into military service he passes into military control and questions concerning his retention in or separation from active service are responsibilities of the War Department. All final determinations must be made by the military authorities and it is the expressed intention and desire of the War Department that such determinations be made in accordance with the facts presented and in the best interests of all concerned. *It is the function of all elements of Selective Service, when called upon through proper channels, to assist the War Department with information and recommendation consistent with the facts.*" [Emphasis added.]

The responsibilities given local boards in connection with the granting of furloughs to men immediately following their induction into the army shows a history of local board recommendation of such furloughs to the War Department. See Memoranda to All State Directors, No. I-415 dated April 17, 1942, and No. I-423 dated May 18, 1942, and State Director Advice No. 204 dated May 8, 1943. There can be no doubt that the War Department regularly requested a statement from local boards concerning the advisability of such furloughs. Therefore, when Sartor asked for an extension of his furlough and the army demanded the recommendation of his local board,[1] the usages of the Selective Service System required the board to grant its advice in compliance with the army's demand.

Authority for the usage established exists in the Selective Training and Service Act and Regulations. The Act decrees that: "Such local boards, under rules and regulations prescribed by the President, shall have power within their respective jurisdictions to hear and determine * * * all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards," 50 U.S.C.A.Appendix, § 310(a)(2). The Regulations, Paragraph 63, 515.12, declare that: "The jurisdiction of each local board shall extend to all persons registered in, or subject to registration in, the area for which it is appointed * * *. It shall have full authority to do and perform all acts authorized by the selective service law." Since one inducted into the army continues to be a registrant of his local board under the classification I-C, the broad jurisdiction granted to the board enables it to recommend a furlough extension for an inductee-registrant upon request by the army.

The local board was entitled to consult its appeal agent, Cohen, in determining its proper action as to a recommendation, for the Second Edition of the Selective Service Regulations, Paragraph 603.71, in outlining the work of the government appeal agent lists duties concerning the classification of registrants and specifies the additional duty "after classification, to investigate and report upon matters which are submitted for his investigation by the local board." Ascertaining the advisability of extending a furlough falls within the meaning of the quoted language.

■ To constitute the offense of bribery within the meaning of 18 U.S.C.A. § 207,

---

"Headquarters Ninth Service Command
"Office of the Commanding General
"Fort Douglas, Utah
　　　　　"February 17, 1943
"(SPKIR), 201—Sartor, James L.
"Private James L. Sartor,
"424-North Main Street,
"Los Angeles, California.
"Dear Sir:
"Please be advised that it will be necessary for you to request a recommendation from your Local Selective Service Board regarding further extension of your Enlisted Reserve Corps status.
"It is suggested that you present a copy of this communication to your Local Board, and ask them to make their recommendation through the State Director of Selective Service, Plaza Building, Sacramento, California. It is the function of the Selective Service System to register, classify, and deliver for induction men who

are considered eligible and qualified for such procedure. It is not consistent that the War Department should nullify the action of the Selective Service System by unduly extending the deferment status of individuals selected for service. Hence the procedure suggested above.
"I am sure that if, in the opinion of the Local Board, an emergency exists in your case, and also that a sincere effort has been made during the past sixty days to arrange your affairs for service in the Army, they will make recommendation to that effect.
"It is felt that this office has been unusually generous in allowing you sixty days.
　　"Very sincerely yours,
　　　"A. E. Merrill, Lt.Col., Cavalry,
　　　"Assistant to Director,
　　　"Personnel Division"

it is sufficient if the action to be affected by the bribe was a part of any established procedure consistent with the authority of a governmental agency. In United States v. Birdsall, 233 U.S. 223, 231, 34 S.Ct. 512, 514, 58 L.Ed. 930, the influencing of two special officers in the Bureau of Indian Affairs was held within the condemnation of the statute. Concerning the action to be influenced the court commented: "To constitute it official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the Department under whose authority the officer was acting. [Citing cases.] Nor was it necessary that the requirement should be prescribed by a written rule or regulation. It might also be found in an established usage which constituted the common law of the Department and fixed the duties of those engaged in its activities."

The court found authority on the part of the Commissioner of Indian Affairs to advise whether leniency to violators of the law should be granted where the Commissioner's advice was requested by the sentencing judge, explaining, page 235 of 233 U.S., page 516 of 34 S.Ct., 58 L.Ed. 930: "In executing the powers of the Indian Office there is necessarily a wide range for administrative discretion, and in determining the scope of official action regard must be had to the authority conferred; and this, as we have seen, embraces every action which may properly constitute an aid in the enforcement of the law." See also, Haas v. Henkel, 216 U.S. 462, 480, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112; Kemler v. United States, 1 Cir., 133 F.2d 235, 238; Whitney v. United States, 10 Cir., 99 F.2d 327, 330; Daniels v. United States, 9 Cir., 17 F.2d 339, 343; Browne v. United States, 6 Cir., 290 F. 870, 872; Rembrandt v. United States, 6 Cir., 281 F. 122.

■ We conclude that the second count of the indictment in the instant case states a federal offense, and that the trial court did not err in overruling appellants' demurrers to that count.

■ Appellants insist that the evidence herein does not support the allegations of count two of the indictment. They point out that count two describes a conspiracy to ask a bribe with intent to have Cohen's action influenced in a matter pending before him in his official capacity, namely, a recommendation for extension of furlough, whereas the evidence shows that before the conspiracy was formed the army had acted favorably on the furlough application. We disagree with appellants' basic assumption that because the army had acted with respect to the furlough, there was no matter pending before Cohen in his official capacity. The problem of the local draft board's recommendation still necessitated Cohen's attention, for according to the testimony the military authorities desired and acted upon that recommendation after discovering their mistake in granting the furlough without it.

■ The admission in evidence of certain testimony of Federal Bureau of Investigation Agent MacCullock is claimed as error by appellant Schnee. Schnee maintains that he was held in custody by members of the Los Angeles Police Department from 5:30 P.M. on Saturday, March 6, until agents of the F. B. I. assumed control about 7:00 P.M., that the federal agents interrogated him (but not steadily, for he admitted he fell asleep in the F.B.I. office) until 3:00 A.M. Sunday, that they then booked him at the County Jail for failing to have his Selective Service Registration Card in his possession, that both local and federal agents refused to let him speak to his lawyer, that he was released from jail on bail Sunday night, that he was arrested Monday night on the charge involved herein, and that the draft card charge was dismissed Tuesday morning. The record contains conflicting evidence as to the length of time Schnee was held by the F. B. I. before he was booked in jail and as to his being prevented from seeing his attorney. There is no conflict, however, that he was allowed to telephone his wife at 7:00 P.M. The testimony particularly condemned contains the witness MacCullock's account of his interrogation of Schnee and attributes to Schnee assertions that he knew nothing about the events of March 6, that he had seen Cohen on the morning of March 6, that he had spoken on the telephone that afternoon to the theatre manager mentioned by Sartor, and that he did not care to sign a statement of his remarks unless advised to do so by his attorney. Schnee denounces the testimony claiming that its purpose was to discredit Schnee by inferring his guilt from the fact that Schnee did not sign a written confession.

On the basis of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829, and the applica-

ble statutes, viz. 5 U.S.C.A. § 300(a) and 18 U.S.C.A. § 595, Schnee takes the position "that there was prejudicial error when the trial court admitted into evidence as part of the Government's case in chief the testimony of Agent MacCullock relating to conversations with Schnee prior to any charges having been filed against Schnee and prior to bringing him before a United States Commissioner for arraignment on a criminal charge."

We think the McNabb decision, supra, does not govern the situation herein. In that case and those cited by appellant Schnee as following it—Anderson v. United States, supra; Runnels v. United States, 9 Cir., 138 F.2d 346; United States v. Hoffman, 2 Cir., 137 F.2d 416; Gros v. United States, 9 Cir., 136 F.2d 878; United States v. Haupt, 7 Cir., 136 F.2d 661—statements held inadmissible were invariably incriminating and related to essential elements in the case against the declarant. In the instant case Schnee's remarks to the F. B. I. agent emphasized his innocence. A study of the record shows that the facts concerning Schnee's telephone conversation with the theatre manager, his morning meeting with Cohen, and his refusal to sign a statement were corroborated by his own testimony. The only information gleaned solely from the F. B. I. agent's testimony was Schnee's remark that he did not care to sign a statement unless advised to do so by his attorney.

There is no claim that Schnee's reference to his attorney was not purely voluntary; there is no claim that Schnee was subjected to any rough treatment on the part of the federal agents; there is no claim of any of the overzealous conduct condemned in the McNabb and its satellite cases, supra. The Supreme Court expressed certain limitations on its decision: "The mere fact that a confession was made while in the custody of the police does not render it inadmissible," 318 U.S. 346, 63 S.Ct. 615, 87 L.Ed. 819, and "We hold only that a decent regard for the duty of courts as agencies of justice and custodians of liberty forbids that men should be convicted upon evidence secured under the circumstances revealed here," 318 U.S. 347, 63 S.Ct. 616, 87 L.Ed. 819. See United States v. Klee, D.C. Wash., 50 F.Supp. 679. Therefore, we hold that the trial court committed no error in admitting the evidence in question.

Appellant Cohen objects to the admission into evidence of the testimony of four witnesses relating to various extrajudicial statements made by appellant Schnee. For the most part the recitals of the witnesses related to details established by Schnee's own testimony. The few additional remarks attributed to Schnee, such as that, unless advised to do so by his attorney, he did not care to sign a statement of his story to F. B. I. agents, could not be presumed to influence the jury as against the more direct evidence in the case. Therefore, we find no prejudicial error in the ruling of the court.

Affirmed.