Ernest P. WILSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7115.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 5, 1956.

Decided Feb. 29, 1956.

Writ of Certiorari Denied
May 14, 1956.

See 76 S.Ct. 789.

**522**

Frank E. Jordan, Jr., Columbia, S. C., for appellant.

Irvine F. Belser, Jr., Asst. U. S. Atty., Columbia, S. C. (N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Ernest P. Wilson, with Everett L. Dean, was indicted under Sections 202 and 371 of Title 18 U.S.C.A. The indictment contained eleven counts, ten pertaining to the substantive offenses of soliciting and accepting bribes and the eleventh count being one of conspiracy. The co-defendant, Dean, entered a plea of guilty to all counts of the indictment. Wilson plead not guilty. Counts One, Two, Three, and Four of the indictment were not applicable to Wilson and were not at issue in the trial.

Although Dean and Wilson were charged in the same indictment, they were tried separately. The case was first called for arraignment in February, 1955. Wilson obtained a continuance of the trial as to him at that time, however, because of a recent change of counsel. Dean entered a plea of not guilty, and the case as to him proceeded to trial. After two and a half days of trial, and just as the Government was about to commence its reply evidence, Dean withdrew his plea of not guilty and entered a plea of guilty to all eleven counts of the indictment. Wilson was tried at the next term of court, in June, 1955. Count 10 (concerning the acceptance of certain money on June 18, 1953) was voluntarily withdrawn by the Government.

After the jury returned a verdict of guilty as to all counts submitted to it, Judge Timmerman sentenced Wilson to imprisonment for a period of one year and a fine of $200.00 on each of counts 5, 6, 7, 8, and 9, and to imprisonment for three years and a fine of $200.00 on count 11, the sentences on all counts except number 5 to run concurrently, and to be suspended on five years probation. Wilson, who has remained at liberty under bond since the time of the trial, has duly appealed to us.

These questions are involved in this appeal:

(1) Whether Wilson's alleged temporary lack of any specific duties or authority in connection with the subject matter of the bribe made it legally impossible for him to have committed the crime of bribery?

(2) Could Wilson stand properly convicted under the indictment in this case and 18 U.S.C.A. § 2 as having aided and abetted the co-defendant Dean in committing the crime of bribery?

(3) Regardless of his own ability to commit the crime of bribery, was Wilson properly convicted of conspiring with co-defendant Dean and others for Dean to commit the crime of bribery?

(4) Was there reversible error in the instructions of the District Judge?

We think all these questions must be answered adversely to Wilson. The judgment of the District Court will, accordingly, be affirmed.

After enlisting in the Army in 1933 and being commissioned as an officer in the Adjutant General's Corps in 1942,

Wilson was assigned in June, 1951, as Assistant Adjutant General of Fort Jackson, South Carolina, and in August, 1951, as Adjutant General of that post. He held that assignment until January 14, 1953. At that time, he was relieved as Adjutant General to await trial by general court martial on charges of dishonorably passing bad checks and failing to pay his debts to various civilians and military subordinates. From that date until his trial in May, 1953, he had no specific duties except to prepare his defense to the charges against him. He was convicted on one bad check charge and sentenced to forfeiture of pay in the total amount of $1,200.00. He was acquitted on the rest of the charges. Sometime after his trial, he was assigned to assist with the Reserve training program conducted at Fort Jackson during the summer period. In September, 1953, he was assigned as Assistant G-3 (Operations and Training) of Fort Jackson. During all of this time he remained assigned to the same headquarters unit, as an officer on the staff of the Commanding General. In November, 1953, he became eligible for retirement and retired from active duty.

In February, 1953, just after Wilson had been relieved as Adjutant General and while Dean was still Insurance Officer, an insurance salesman named Kenneth Mason, who had sold insurance at Fort Jackson and other military bases in the past, came to Columbia, South Carolina, to check on the situation at Fort Jackson. Not long after his arrival he received a phone call from an unidentified person who suggested that if he wanted to sell insurance at Fort Jackson, he should get in touch with Captain Dean and that Captain Dean might want some money for "little extra favors, so to speak." There was testimony from Captain Dean which might have warranted the jury in concluding that the unidentified caller was Wilson. Mason made connections with Dean and during the next three days paid him $2,800.00. In return for this money, Mason and a crew of salesmen whom he was to assemble, were to be allowed to solicit and sell life insurance to military personnel, including trainees, at Fort Jackson, and the applicable regulations were to be sufficiently relaxed or liberally administered so as to make this possible.

Mason immediately set about collecting his crew and within the next few days had assembled some 6 or 7 salesmen at Fort Jackson. Dean in due course issued permits to Mason and his crew. No changes were made in the regulations, however, and after waiting around several weeks the assembled salesmen gradually drifted back to their former places of business. Dean continued to give Mason a series of excuses, however, such as difficulties with his military superiors, new regulations from higher headquarters, etc., for his failure to perform his part of the bargain. Late in May, Dean, at the request of Wilson, made arrangements for Mason to meet Wilson. During the meeting, Wilson represented himself to be Colonel Raymond H. Russell, the new Adjutant General, and informed Mason that unless Mason paid him $4,000.00, the deal was off and Mason would not be permitted to sell insurance at Fort Jackson. Mason accordingly raised the money by borrowing on his automobile and furniture. According to Mason's testimony, he made payments of $2,500.00 and $1,100.00 directly to Wilson. The other $400.00 was left with Dean by Mason to be delivered to Wilson. During all his dealings with Wilson, Mason believed Wilson to be the Adjutant General at Fort Jackson. Mason ultimately became dissatisfied with the way things were going, and brought suit to recover the $6,800.00 he had paid. This resulted in disclosure of the bribery scheme and ultimately in the instant criminal proceedings.

█ The answer to the first question with which we are concerned, Wilson's guilt under the bribery counts of the indictment (counts 5, 6, 7, 8, and 9), depends upon the proper interpretation and application of the statute upon which these counts were based. We set out this statute in full:

Title 18 U.S.C.A.

"§ 202. Acceptance or solicitation by officer or other person

"Whoever, being an officer or employee of, or person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or agency thereof, or an officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or of both Houses thereof, asks, accepts, or receives any money, or any check, order, contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both; and shall forfeit his office or place and be disqualified from holding any office of honor, trust, or profit under the United States.

"This section shall not apply to violations of section 213 of this title."

If this statute be viewed solely from the standpoint of grammar and phraseology, it is quite striking how many broadening words are used in the statute: "in *any* official capacity," "*any* department or agency", "on *any* question, matter, cause, or proceeding", which *may at any time* be pending, "which *may* by law be brought before him." Consider the number of disjunctive or alternative persons, actions, or situations referred to: "an officer *or* employee of, *or* person acting for or on behalf of the United States," "any department *or* agency", "decision *or* action", "any ques-

tion, matter, cause, *or proceeding* which may at any time be pending, or which may by law be brought before him", "in his official capacity, *or* in his place of trust *or* profit." There is no verbal requirement that the matter be pending before the official at the time of the bribe. It is sufficient if it "*may at any time* be pending," or if it "*may by* law be brought before him" at some time in the future.

Certainly, in the face of such sweeping language and the purpose it was designed to accomplish, we find no reason to find any intent on the part of Congress that the statute must be narrowly construed, to exclude any person or any conduct fairly within the broad statutory ambit. To this statute, (and its companion, 18 U.S.C.A. § 201), the federal courts have properly given an extremely liberal interpretation.

Thus in United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930, the recommendations for clemency (for which the bribe was accepted) were not a part of the prescribed duties of the agents in the Bureau of Indian Affairs. Said Mr. Justice (afterwards Chief Justice) Hughes, 233 U.S. at page 230, 34 S.Ct. at page 514: "Every action that is within the range of official duty comes within the purview of these sections. There was thus a legislative basis * * * for the charge in the present cases, if the action sought to be influenced was official action."

The Government quite properly relies on our own decision in Hurley v. United States, 192 F.2d 297, where we were dealing with 18 U.S.C.A. § 201, which contains language quite similar to that now before us in 18 U.S.C.A. § 202. There the defendant Hurley, who feared that he was about to be drafted into the military service, paid $450.00 to one Nichols to keep him out. Nichols was a sergeant in the Air Force and in charge of the men being processed at the induction center. He "had nothing to do with the actual physical examination nor could he make any recommendation as to whether a prospective inductee should

be accepted or rejected for military service", 192 F.2d 299, and could not legally keep a man out of military service. In that case, we said, 192 F.2d at page 300: "When the bribee is an officer of the United States, there is no necessity to show that he was acting in an official capacity, in order to make out a case under 18 U.S.C.A. § 201."

In Canella v. United States, 9 Cir., 157 F.2d 470, some of the actions involved in the conspiracy to solicit and accept bribes were entirely outside the duties of Canella, a Regular Army Colonel, as Quartermaster of the Santa Ana Army Air Base. Said Circuit Judge Orr, 157 F.2d at page 481:

"Canella apparently overlooks the fact that whenever officers of the United States army take any action whatever in regard to the army their official duties are involved. The United States is entitled to army officers who do not corruptly sell their recommendations to anyone on any subject."

See, also, United States v. Holmes, 3 Cir., 168 F.2d 888, in which the defendant had already turned in to his superior a report of the irregular sales, so that the matter was thereafter beyond his authority or control; Cohen v. United States, 9 Cir., 144 F.2d 984, certiorari denied 323 U.S. 797, 65 S.Ct. 440, 89 L.Ed. 636, in which the conviction of both defendants was affirmed, over the defendants' objections that the local board had no jurisdiction to recommend furlough for a person already in the military service, that such a recommendation had no relation to Cohen's duties as appeal agent, and that Cohen was not connected with the matter in any official status; Whitney v. United States, 10 Cir., 99 F.2d 327, where the defendant's conviction for soliciting and accepting bribes for recommending approval of sales of tombstones for Indians out of restricted funds was upheld, even though the evidence showed that the defendant's duties as senior clerk in an Indian agency were purely routine and confined to assembling the necessary data for the submission of bids and that he had no authority to make any decision in the matter, this being made by the Department of the Interior in Washington, after recommendation by the agency superintendent.

See, too, Daniels v. United States, 9 Cir., 17 F.2d 339, certiorari denied Appell v. U. S., 274 U.S. 744, 47 S.Ct. 591, 71 L.Ed. 1325; McGrath v. United States, 2 Cir., 275 F. 294, dismissed per curiam 260 U.S. 709, 43 S.Ct. 249, 67 L.Ed. 475; Sears v. United States, 1 Cir., 264 F. 257, 261; Sharp v. United States, 10 Cir., 138 F. 878.

We have considered the cases cited by counsel for Wilson. These cases, we think, against the impressive line of authority we have cited, in no way militate against the conclusion we have reached that, at the times and under the circumstances here involved, the status and capacity of Wilson clearly brought him within the terms of 18 U.S.C.A. § 202. It might be noted that in only one of the cases cited by Wilson's counsel, Blunden v. United States, 6 Cir., 169 F.2d 991, was the conviction of bribery reversed, and, as to that case, we said in Hurley v. United States, 4 Cir., 192 F.2d 297, 300: "We are not unmindful of Blunden v. United States, 6 Cir., 169 F.2d 991, but insofar as that decision is in conflict with our decision here, we think it incorrect."

■ At the times vital herein, Wilson was still an officer of relatively high rank on active duty with the Army and stationed at Fort Jackson. For more than a year and a half before the incidents with which we are here concerned, he had played an active role in the very matter which Mason now wished to have influenced. He personally knew and was known to the other persons concerned in the regulation of the sale of insurance —the Commanding General, the Post Insurance Officer, the other staff sections involved, many of the insurance companies and agents themselves. He was still on the staff of the Commanding General and assigned to the same headquarters unit as he had been all along. He

was a close personal friend of the current Insurance Officer, Captain Dean. He admitted that during the period after his relief as Adjutant General he had made numerous telephone calls to Dean, and the evidence shows that he worked with Dean in setting up the bribery scheme in question. He still had the same access to the Commanding General, Insurance Officer and other staff sections he had had as Adjutant General.

Even though at the time herein involved, Wilson was no longer directly in the chain of supervision of the regulation of insurance sales, he was free and able to make any recommendation he might see fit to make to the Commanding General or to his friend Dean or to any other officer. Regardless of his actual authority, it was still within his practical power to influence the regulation of insurance sales as it had formerly been, particularly with the illegal assistance of his co-conspirator Dean as Post Insurance Officer. It was at least possible that he might be reassigned as Adjutant General, or to some position from which he could bring his influence to bear upon the regulation of insurance sales within the period of time contemplated by the briber Mason.

On these facts, we think, under the cited cases, Wilson clearly came within the group of persons who are covered by the terms of 18 U.S.C.A. § 202. It is immaterial either that he may not have had actual authority to carry out his commitments under the bribery scheme, or that he may have taken no affirmative action to perform his part of his corrupt bargain.

18 U.S.C.A. § 2 provides:

"*Principals*

"(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal.

"(b) Whoever causes an act to be done, which if directly performed by him would be an offense against the United States, is also a principal and punishable as such."

We think Wilson could clearly be guilty under this statute, even if it were held that he could not be convicted as the primary offender under 18 U.S.C.A. § 202. It is well settled that a husband who cannot be convicted as a first degree principal in the rape of his wife by virtue of the consent to sexual intercourse given upon marriage, may yet be guilty as an accessory before the fact or even as a second degree principal when the rape of his wife is actually perpetrated by another man.

There is more than ample evidence in the record to prove that Wilson aided and abetted Dean in committing bribery and that Dean was fully capable of committing this crime under a strict interpretation of 18 U.S.C.A. § 202. Dean was the Post Insurance Officer during the whole period concerned in the bribery and had the subject matter of the bribe within his specific sphere of activity and under his direct supervision. Dean has admitted, by plea of guilty and his testimony in this case, his own guilt. Mason testified that shortly after he arrived in Columbia, on February 9, 1953, he was put in touch with Dean through a telephone call from some unidentified person other than Dean, and Dean testified that Wilson told him that Mason would be out to see him, Dean. The jury might well have inferred that this unidentified person was Wilson and that Wilson thought up the bribery scheme in the first place. Mason also testified that his meetings with Wilson were arranged through the medium of Dean as an intermediary. The telephone conversations between Mason and Dean and between Mason and Wilson recorded by Mason and introduced in evidence as Government's Exhibit No. 7, are full of references to both Dean and Wilson. Dean and Wilson were on close personal terms and were in frequent communication even after Wilson's relief as Adjutant General. Dean and Wil-

son apparently worked closely together in this whole bribery scheme.

■ We think it is clear, too, from a reading of counts 5, 6, 7, 8, 9, 10 of the indictment that Wilson was clearly advised of this charge against him under 18 U.S.C.A. § 2.

■■ Equally clear is it, we think, that under a proper indictment, after a fair trial, upon adequate evidence, Wilson has been convicted of conspiracy under 18 U.S.C.A. § 371. One who is himself legally incapable of committing, as the primary offender, a substantive crime, may yet be guilty of a conspiracy to commit this crime; Cohen v. United States, 9 Cir., 144 F.2d 984, certiorari denied 323 U.S. 797, 65 S.Ct. 440, 89 L.Ed. 636; Culp v. United States, 8 Cir., 131 F.2d 93; Downs v. United States, 3 Cir., 3 F.2d 855, certiorari denied 268 U.S. 689, 45 S.Ct. 509, 69 L.Ed. 1158. Conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; Blumenthal v. United States, 9 Cir., 158 F.2d 883, certiorari denied 331 U.S. 799, 67 S.Ct. 1306, 91 L.Ed. 1824, affirmed 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489.

■ There is no doubt that Dean, as Post Insurance Officer could commit the crime of bribery. And, from what has already been stated, it is obvious that all the elements of the crime of conspiracy by Wilson with Dean to commit bribery were adequately proved by the record.

In the light of what has been hitherto set out, we find no reversible error in the District Judge's instructions to the jury or in his conduct throughout the trial.

The judgment of the District Court is affirmed.

Affirmed.