**SCHNEIDER v. UNITED STATES.**

No. 12501.

United States Court of Appeals
Ninth Circuit.

Aug. 21, 1951.

Rehearing Denied Dec. 11, 1951.

Jacob W. Friedman, New York City (Louis M. Leibowitz, New York City, of counsel), for appellant.

John B. Tansil, U. S. Atty., Billings, Mont., Emmett C. Angland, Asst. U. S. Atty., Great Falls, Mont., for appellee.

Before DENMAN, Chief Judge, and BIGGS (sitting by special designation), and STEPHENS, Circuit Judges.

BIGGS, Circuit Judge.

The defendant, Schneider, was indicted in the court below for an offer and for the payment of money to an officer of the United States in violation of Section 201, Title 18 United States Code. He was tried, was found guilty and has appealed. Taking those inferences from the evidence most favorable to the prosecution, as we must, the following appears.

Schneider was the successful bidder for the purchase of scrap wool and cotton materials, property of the United States and located at an Army air base in Montana. On November 22, 1948, pursuant to telephone conversations referred to hereinafter, he came to the air base to arrange for the shipment of the scrap. On his arrival he suggested to Sergeant Aulgur that "a deal be made between the two of us". Later, when Lieutenant Apperson, the Base Salvage Officer, met Schneider at a warehouse on the base, the latter proposed that he and the Lieutenant substitute some other salvage material for the scrap which he had purchased. Schneider told the Lieutenant that he would give him money which was in his brief case. Lieutenant Apperson's attitude toward this proposed bribery was noncommital on the surface but he promptly informed the FBI as to what had taken place. He was told not to encourage Schneider but to accede to anything that Schneider wished.

On the next day much salvage material, which had not been purchased by Schneider, was taken from a warehouse. This material, as well as the items which had been purchased by Schneider, was loaded into a freight car under his direction. Later in the day in a hotel room in Great Falls Schneider handed $1,500 to Lieutenant Apperson. As soon as the Lieutenant reached the lobby of the hotel he handed an envelope containing the money to agents of the Federal Bureau of Investigation. Schneider's indictment and trial followed.

We will take up seriatim, with one exception,[1] the points on which Schneider relies for reversal.

(1) *Sufficiency of the Indictment.* Schneider asserts that the indictment is insufficient as a matter of law because it does not describe the duties or official functions of Lieutenant Apperson. Cases are cited where indictments have been held insufficient under Section 201, Title 18, United States Code (or its predecessor statute, 18 U.S.C. (1940 ed.) Section 91) because the duties or official functions of the person who received the money were not set out. United States v. Kemler, D.C.Mass., 44 F. Supp. 649; United States v. Patterson, D.C. Fla., 286 F. 760; Boykin v. United States, 5 Cir., 11 F.2d 484.

The first count of the indictment is set out in the footnote.[2] Lieutenant Apperson is described as: "First Lieutenant, United States Air Force and Base Salvage Officer of the Great Falls United States Air Force Base." No further details as to his duties are given in the indictment but it is alleged that the intent was to influence his decision "in his official capacity". The second count of the indictment is couched in substantially the same language except that it charges the actual payment of money to Apperson.

The statute[3] itself and the cases construing it or its predecessor make it clear that no violation of the law can take place unless the individual bribed or attempted to be bribed is an officer or employee or person acting for or on behalf of the United States or a department or agency thereof, and that the bribe or the offer is in connection with his line of duty. The duties of him to whom the offer is made or the bribe given are most pertinent. But we are of the opinion that the description in the indictment is adequate and sufficient under the ruling of this court in United States v. Bickford, 9 Cir., 168 F.2d 26, 27–28. As was there said, under Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S. C.A., an indictment is valid if sufficient facts are stated to inform the defendant

1. We will deal with the seventh point raised by the defendant sixth and with the sixth point last since, as will be seen, the sixth point is dispositive of the case.

2. "That on or about the 22d day of November, 1948, in the state and district of Montana and within the jurisdiction of this Court, Meyer Schneider unlawfully and feloniously promised money to a certain officer and person acting for and on behalf of the United States in an official function, to-wit: Harvey B. Apperson, First Lieutenant, United States Air Force and Base Salvage Officer of the Great Falls United States Air Force Base, as the defendant well knew, for the purpose and with the intent to influence the decision and action of the said Harvey B. Apperson in his official capacity and function, as aforesaid, on a certain matter then pending before him in his official capacity, as the defendant well knew, and for the purpose and with the intent to influence the said Harvey B. Apperson, as aforesaid, to allow and make opportunity for the commission of a fraud on the United States and to induce the said Harvey B. Apperson acting as aforesaid, as the defendant well knew, to do an act in violation of his lawful duty, as the defendant well knew, in respect to disposal of salvage property of the United States, as aforesaid."

3. Section 201, Title 18 United States Code, provides: "Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of any thing of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, * * * on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both."

of the offense with which he is charged and if the averments are sufficiently definite and certain to safeguard him from a second prosecution for the same offense. The salutary rule of the Bickford case is applicable here.

It should be noted that the statute makes it a crime to offer money or to pay money to an officer of the United States "to induce him to do or omit to do any act in violation of his lawful duty * * *". If any air base salvage officer should fail to prevent or to report an unauthorized removal of government property from the base knowing that such a removal was contrary to law he would fail in his lawful duty. This would be true whether or not he possessed specific authority to sell the property. Cf. Cohen v. United States, 9 Cir., 144 F.2d 984, 987. The broad language and obvious intent of the Act here under consideration does not permit the drawing of such fine distinctions of exact duties as those sought to be maintained by the defendant. We can conceive of situations where more specific allegations as to an officer's duties would be necessary in order to show that the act or omission to which the bribe was directed was within the scope of official conduct. But this is not such a case. Apperson's official duties, as the indictment clearly alleges, required him to protect the government property on the base and Schneider's bribe was offered to destroy that protection.

(2) *Sufficiency of Proof of Officer's Authority to Act.* It is the defendant's contention that there was not sufficient evidence to prove an intent on his part to influence Lieutenant Apperson's decision in a matter pending before him in his official capacity. This is to state in effect that there was no proof of Schneider's intent to induce the Lieutenant to violate his duty by adding unpurchased salvage material to that bought legitimately by the defendant. In this connection the defendant simply makes the bald argument that since Lieutenant Apperson had no authority to negotiate a sale of goods taken illegally from the warehouse, Schneider's payment of money to the Lieutenant did not fall within the reach of the statute. But there is ample evidence to support the conclusion that Schneider offered the bribe to Lieutenant Apperson to cause the latter to fail to do his duty as the Base Salvage Officer. It is clear from the Regulations, received in evidence, by which Lieutenant Apperson's conduct as a Base Salvage Officer was required to be governed that a Base Salvage Officer acts for the Commanding Officer in respect to all salvage activities at the installation; that the Base Salvage Officer is responsible for all property turned over to him and that he is required to exercise "strict supervision over all transactions and will use due caution and diligence to prevent irregularities or opportunities for fraud and/or collusion." See USAF Supply Manual (AF Manuel 67-1), Department of the Air Force, Part I.f (1), Plaintiff's Exhibit No. 1., p. 572. The validity of the Regulations are not attacked in any way.

■ Schneider's intent to influence Lieutenant Apperson to the end that Schneider might steal salvage material from the United States is amply demonstrated from the evidence.

(3) *Alleged Improper References Made to Other Offenses or to Schneider's Conduct.* During his opening statement the Assistant United States District Attorney stated that Lieutenant Apperson would testify as to conversations which he had had with Schneider to the effect that Schneider had told him that he was operating on "a very large scale in all the eastern depots". Schneider's counsel immediately objected and charged that this narrative was prejudicial. The court sustained the objection and stated that the jury would be warned in the instructions that they should not consider these statements or any evidence of such a nature. Counsel for the United States apologized to the court, to the jury and to opposing counsel and stated if the evidence which he intended to offer was not admissible he would join with the court and with the defendant's counsel in asking the jury to disregard it. The matter was not pursued further and the defendant's counsel asked no instructions from the court relevant to this issue and none were given.

■■ If the United States had had evidence which it could have offered to prove

that Schneider had stated to Lieutenant Apperson that he was operating on "a very large scale in all the eastern depots", the opening statement objected to would have been in order and such evidence properly could have been received. Schneider's own statements as to other crimes of a like nature committed by him would have been admissible to show a course of conduct or a general design on his part to violate the law. The testimony also would have been admissible as showing Schneider's state of mind. See the decision of this court in McCoy v. United States, 9 Cir., 169 F.2d 776, 783. But with the record in its present state, we cannot know the precise nature of the evidence which the United States Attorney intended to offer. In view of our ultimate disposition of the case at bar we find it unnecessary to pursue this issue further.

■ The defendant also objected to evidence given by Sergeant Aulgur who testified that Schneider had asked questions about some salvage material not included in his purchase and had asked "if some kind of deal couldn't be made". Aulgur treated this as a legitimate business inquiry but, according to Aulgur, Schneider then said that he meant "just a deal between the two of us" and "a lot of money could be made". Obviously, if this testimony be believed Schneider was suggesting a bribe to Sergeant Aulgur. The evidence, however damaging to Schneider, was nonetheless clearly admissible under the ruling of the McCoy case.

■ (4) *Alleged Reversible Error in Respect to Telephone Conversations.* The point attempted to be made by the defendant in respect to three telephone calls made by Schneider to Private Walker, prior to Schneider's trip to the base, is very far from clear. It does appear, however, that the defendant objected because he alleges that his identity as the person making the calls to the base was not properly established and because he is said to have said to Walker, "I am just an every day guy; can you help me out?" The words quoted certainly are not damaging in and of themselves. Walker went on to testify that Schneider had asked him questions concerning the nature of the salvage goods included in the merchandise which he had bought, whether, for example, there was any overage and whether socks were included and could be separated from the other goods. Insofar as we can see this testimony, though not as close to the real issue of the case as it might have been, nonetheless was relevant. But it could not have harmed the defendant and in fact could have been offered by him to show the legitimacy of his motives in coming to the air base. At any rate there is no prejudicial error here.

■ (5) *The Refusal of the Trial Court to Permit Defendant's Counsel to Inspect Memorandum Used to Refresh Recollection.* This issue is a frivolous one. The District Judge at no time refused to permit examination by defendant's counsel of a memorandum used by Agent Matthews to refresh his recollection insofar as it related to any conversation or interview had by him with Schneider. The defendant's counsel desired to examine all notes made by the Agent in connection with the case. The court properly denied counsel's "wholesale request" and the defendant's counsel never saw fit to attempt any limitation of his request as the court itself had suggested.

■ (6) *Entrapment.* The final point ("7") raised by the defendant is that he was subjected to an elaborate plan to entice him to offer a bribe and that the evidence of this was sufficient to support a defense of entrapment and necessitate a judgment of acquittal, or in any event to require the submission of that issue to the jury. A short and sufficient answer to these assertions is that there is no substantial evidence of entrapment in the record. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210; 77 L.Ed. 413.

■ (7) *The Court Erroneously Charged the Jury on an Issue of Negligence.* This is the ground of appeal ("6") urged by the defendant and we treat it last since it is dispositive of the case. The court below charged the jury as to intent in the following words: "Now, of course, intent, the intent is always an element, necessary ingredient to be established in a case of this kind. This is a felony case and the

jury before they can convict the defendant must find here in this case beyond a reasonable doubt a joint operation of act and intent, *or what we call in law criminal negligence. Now criminal negligence in that connection means the doing of an act with a reckless disregard of the consequences, not caring particularly what happened.*[4] Now you are unable, of course, any of you to look into the mind of the defendant and determine with what intent he acted if you believe that he acted in accordance with the charge contained in this indictment. But in order to determine that intent you must take into account all of the evidence in the case and all of the circumstances that you have observed during the progress of the trial in connection with the case and the facts of the case and sometimes circumstances are very important and afford very important evidence, and that is for you to say because you judge of the facts and the circumstances the same as you do the testimony of the witness from the witness stand. But you remember in that connection you are to recall the presumption that every sane person is presumed to intend the natural and usual consequences of his own deliberate act. However, the court instructs that as heretofore that you must be satisfied beyond a reasonable doubt of his guilt before you can find him guilty; that is, you must be satisfied beyond a reasonable doubt that he acted, that if he acted at all with a criminal, that is to say, with an evil intent to violate the law."

At the close of the charge and in response to the court's direction, one of the defendant's counsel set forth his exceptions to the instructions. One of these exceptions was specifically directed to the issue of "criminal negligence" which, probably inadvertently, had been referred to by the judge. The defendant's counsel stated that "the instructions of the court are erroneous in defining in this case as one element of crime criminal negligence and then in turn defin-

ing criminal negligence because the gist and substance of this case is intent and the acts of those charged to have been done must have been done intentionally and no question of criminal negligence can be considered by the court in relation thereto as intent is a material part of the charge." Despite counsel's exception the learned trial judge did not correct the charge.

The charge in the instant case, in its erroneous aspect, is quite similar to that considered in United States v. Crescent-Kelvan Co., 3 Cir., 164 F.2d 582, 589.[5] In that case the trial judge stated that the guilt of the defendants had to be demonstrated "by proving by preponderance of the evidence their wrongdoing". Though the trial court first corrected this error at the suggestion of the United States Attorney, and charged as to proof of guilt "beyond a reasonable doubt", it reverted to the rule of "preponderance of the evidence" at or near the end of its attempted correction of the charge. The Court of Appeals for the Third Circuit felt obliged to reverse on the ground that the error was prejudicial.

In the case at bar Schneider was either guilty or not guilty of specific criminal intents, viz., of the intent to offer money for a bribe and to pay money as a bribe. If the jury found that he possessed such intents they were legally entitled to find him guilty as they did. If they found that he did not possess such intents or the intent to offer money under count 1 or to pay money under count 2, they were required to find him not guilty. No third course was possible. The error was a prejudicial one for the defendant could not possibly have negligently offered a bribe or given one but the jury under the instructions given could have concluded that mere careless conduct on his part was sufficient to sustain his guilt. Consequently we must reverse.

Accordingly the judgment of conviction is reversed and the cause is remanded with the direction to grant a new trial.

4. Emphasis added.

5. In which Judge Albert Lee Stephens of this court and the present writer sat with Judge Maris of the Third Circuit.