UNITED STATES of America,
Plaintiff-Appellee,

v.

Gjergj GJIELI, (81–1087), Nickola Lulgju-
raj, (81–1088), Zeff Lulgjuraj, (81–1089),
Defendants-Appellants.

Nos. 81–1087, 1088 and 1089.

United States Court of Appeals,
Sixth Circuit.

Sept. 21, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 14, 1983.

Leslie R. Seeligson, argued, Ann Arbor, Mich., John J. Pomann, Evan H. Callanan, Westland, Mich., for defendants-appellants in No. 81–1087.

Richard A. Rossman, U.S. Atty., John N. Thompson, Jr., Sheldon Light, (argued), Asst. U.S. Attys., Detroit, Mich., for plaintiff-appellee in all cases.

John J. Pomann, argued, Westland, Mich., for defendants-appellants in No. 81–1088.

Evan H. Callanan, argued, Westland, Mich., for defendants-appellants in No. 81–1089.

Before LIVELY and KENNEDY, Circuit Judges, and WILHOIT,* District Judge.

KENNEDY, Circuit Judge.

Defendants Gjergj Gjieli, Nickola Lulgjuraj and Zeff Lulgjuraj appeal from their jury convictions of bribery of a public official, 18 U.S.C. § 201(b)(3), and conspiracy to bribe a public official, 18 U.S.C. § 371. All three argued in the District Court and assert on appeal that the acts charged in the indictment and described by the evidence did not constitute a violation of 18 U.S.C. § 201(b)(3) because it was not within the scope of the official authority of the bribed official to effect the object of the bribe. Second, the defendants urge reversal under the due process clause and the Court's supervisory powers because of certain misbehavior by the government in the investigation and prosecution of the charges. We find that the defendants' acts violated the statute. The misbehavior of the government, although serious, does not warrant dismissal of the charges. We, therefore, affirm the convictions.

I.

The transcript of the trial, including taped conversations, reveals an unusual tale. Robert Van Hengel, an agent of the Bureau of Alcohol, Tobacco and Firearms of the United States Treasury Department (ATF), was a regular customer at a bar in Detroit where one of the defendants, Gjergj Gjieli, was employed as a bartender. Gjieli was interested in purchasing a short wave radio set from Van Hengel. On June 11, 1980, during negotiations over the radio which Gjieli agreed to purchase, Gjieli suddenly told Van Hengel that he had $100,000 for him, plus the biggest present he had ever received. When questioned, Gjieli wrote the name "Zef [sic] Lulgjuraj" on a slip of paper and handed it to the agent. Gjieli then stated that Lulgjuraj was in the State Prison of Southern Michigan at Jackson, Michigan, (SPSM or Jackson) and that "his people" wanted him out so he could return to his homeland, Albania.[1] Van Hengel warned Gjieli that such an offer to a federal agent could get him in serious trouble. Gjieli nevertheless suggested that Van Hengel might have contacts and perhaps could arrange a break-out or transportation for Lulgjuraj who could escape at some unguarded moment. Van Hengel told Gjieli that he would have to think about the matter and would contact him later.

---

* Honorable Henry R. Wilhoit, Jr., United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Lulgjuraj was serving four life sentences, three for murder and one for attempted murder imposed by a Michigan state court.

The next day Van Hengel reported the conversation to his supervisor in the Detroit office of ATF. On June 13, Van Hengel met with Special Agent Jim Covert of ATF Internal Affairs and a detective sergeant of the Michigan State Police. On June 16, Van Hengel met with Covert and the Michigan State Police sergeant as well as an FBI agent.[2] Van Hengel was fitted with a body recorder and a radio transmitter at this meeting. A short time later Van Hengel went to the bar and engaged Gjieli in conversation which was secretly taped. Gjieli assured Van Hengel that the $100,000 would be "cash on the line." A test run was discussed, with Van Hengel suggesting that Lulgjuraj would be "moved around a little bit to show what we can do." Van Hengel again requested time to think over Gjieli's proposal.

On July 10, after several weeks in which he had no contact with Gjieli, Van Hengel returned to the bar with another ATF agent. A bartender told Van Hengel that Gjieli no longer worked at the bar having quit to return to Albania with his parents. Van Hengel returned to the bar the next day to get Gjieli's telephone number, but the bartender had not located it. On July 13, Van Hengel again went to the bar. Neither the bartender nor the owner of the bar was able to supply Gjieli's telephone number. Efforts to locate Gjieli over the next few days proved futile.

On July 18, Van Hengel and Covert met with an Assistant United States Attorney. It was agreed that a "ruse" was needed to signal Gjieli that Van Hengel was ready to deliver.[3]

To effect the "ruse" the Assistant United States Attorney presented a request for a writ of habeas corpus *ad testificandum* to a federal District Judge, representing that Zeff Lulgjuraj was a witness in an arson case and that he would be taken from Jackson State Prison to appear before a federal grand jury in Detroit which was investigating the arson. In fact there was no such arson investigation by a grand jury at that time, and there was no plan to take Lulgjuraj into Detroit. Unaware of the deception, the District Judge signed the writ. An ATF agent took the writ to the SPSM on July 22. The agent posed as a Deputy United States Marshal and obtained custody of Lulgjuraj for the pretended purpose of taking him before a federal grand jury. A group of ATF agents and marshals then took the prisoner to the Jackson Municipal Airport where Van Hengel was waiting in an unmarked Michigan State Police car.

Van Hengel got into the car with Lulgjuraj and initiated a conversation about "George," the bartender at De Luca's Bar. Lulgjuraj responded that he knew him and had last talked to him "about 5, 6 months, 5 months." He said he knew nothing of any conversation between Van Hengel and George. Van Hengel suggested that the next time Lulgjuraj talked with Gjieli, "You tell him we had you out. This was my idea to get you here. Just tell him the guy he talked to in the bar, in De Luca's, we had you out. Airplanes were here. OK?" When Van Hengel mentioned "the hundred thousand," Lulgjuraj revealed no apparent knowledge of Gjieli's offer to Van Hengel. When asked specifically if "the hundred thousand is there," Lulgjuraj replied, "I believe so. If he told you that, that's you know, regarding help me, something." Lulgjuraj told Van Hengel to call his home and ask for his son Nick. The meeting ended with Lulgjuraj promising to call his son Nick to tell him to get in touch with Van Hengel either that night or the next day.

Van Hengel received a telephone call from Nick Lulgjuraj later on July 22 and returned the call the next day. After talking with Nick, Van Hengel received a call from Gjieli who said he was returning to

---

2. The FBI subsequently declined an invitation to participate in the investigation.

3. In describing the "ruse" to the grand jury which indicted the defendants, Agent Covert said, "Things got a little quiet, so we decided to do something that would offer an opportunity to these people to either do their thing or not do their thing, to see whether or not they were continuing."

Detroit on July 24. Late in the afternoon of the 24th Van Hengel and another ATF agent met Gjieli and Nick Lulgjuraj at a motel in Detroit and discussed the payment of $10,000 "front money." The same evening Gjieli and Nick delivered $10,000 in currency to the agents. Both meetings were taped on hidden recorders. By prearrangement Nick Lulgjuraj delivered $90,000 in currency to Van Hengel at a motel room in Detroit on August 5. After monitoring the meeting and determining that the delivery had been made, Agent Covert entered the room and arrested Nick Lulgjuraj. Gjieli was arrested the same day in New York.

On August 25, 1980, a federal grand jury in Detroit indicted Gjergj Gjieli, Nick Lulgjuraj and Zeff Lulgjuraj of conspiracy to bribe and bribery of a public official.[4]

Defendants assert that it is not a federal offense to offer or to pay a bribe to an official of the United States for the performance of an act which would violate state law but which does not violate a statute of the United States and is not a part of an official duty. Because Van Hengel had no duty with respect to the custody of a state prisoner and could not use his official position to effect the escape of Zeff Lulgjuraj the defendants contend that the statutory elements of § 201(b)(3) cannot be satisfied.[5] We disagree.

### Statutory Requirements of Section 201(b)(3) Violations

Title 18 U.S.C. § 201 provides in pertinent part:

**4.** The substantive count charged that the three defendants did "corruptly give, offer and promise a thing of value, that is: One Hundred Thousand Dollars ($100,000.00) to Special Agent Robert Van Hengel, ATF, a public official, with intent to induce him to do an act in violation of his duty; that is, to use his knowledge, influence and official position to effect the escape of Zeff Lulgjuraj from the lawful custody of the State of Michigan Department of Corrections; all in violation of Section 201(b)(3), Title 18, United States Code."

**5.** We have accepted for the sake of statutory analysis the defendants' assertion that Van Hengel could not have accomplished the purposes for which he was bribed through his

(b) Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official ... with intent—

    (1) to influence any *official act; or*

    \*      \*      \*      \*      \*      \*

    (3) to induce such public official ... to do or omit to do any action in violation of his *lawful duty;*

    \*      \*      \*      \*      \*      \*

(e) .... Shall be fined ... or imprisoned ... or both, and may be disqualified from holding any office of honor, trust, or profit under the United States. (emphasis added)

The defendants in the present case were indicted and convicted of violating subsection (3) of § 201(b).

Three statutory elements must be satisfied to establish a § 201(b)(3) violation. First, the bribed individual must be a "public official" (or other person named in the statute). Second, the briber must directly or indirectly, corruptly give, offer or promise something of value to a public official. Third, in doing so, the briber must have the intent to induce the public official to act in violation of his lawful duty. 18 U.S.C. § 201(b)(3). The indictment and the evidence at trial set forth and established each of these elements.

### A. Public official requirement

▇ The definitional section of the statute, § 201(a), states:

> official position. This assertion is, however, only arguably true. Clearly Van Hengel could not *legally,* within his official capacity, have arranged the escape of Zeff Lulgjuraj. Yet *no* official, either state or federal, could have *legally* accomplished such a goal. The real question is whether Van Hengel could have used his official position in *any way* to effectuate the desired escape. The ease with which Van Hengel and the Assistant United States Attorney succeeded in gaining Lulgjuraj's release on a writ demonstrates that it may have been *possible* for Van Hengel to have *actually* procured Lulgjuraj's escape through use of Van Hengel's status as a federal officer.

(a) For the purpose of this section:

'public official' means Member of Congress, the Delegate from the District of Columbia, or Resident Commissioner, either before or after he has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia in any official function, under or by authority of any such department, agency, or branch of Government, or a juror; and

'person who has been selected to be a public official' means any person who has been nominated or appointed to be a public official, or has been officially informed that he will be so nominated or appointed; and

\*　　\*　　\*　　\*　　\*　　\*

The indictment in this case satisfies this definition of a "public official" because Van Hengel is a regular *employee* of the Bureau of Tobacco, Alcohol and Firearms, a division of the Department of Treasury.

The dissent accepts the defendants' contention that the phrase "in any official function" in § 201(a) modifies not only persons who are "acting for or on behalf of the United States" but also "officers" and "employees." Accordingly, because Van Hengel's official function as an ATF agent did not include any authority over state prisoners, the dissent would not find Van Hengel to be a "public official" under § 201(a).

■ Contrary to the dissent's view, we conclude that § 201(a) imposes no requirement that a bribed "employee" be acting in "any official function" before the "public official" requirement may be satisfied. Rather, the phrase "in any official function" was intended to modify only "person acting for or on behalf of the United States ..." and not officer or employee. *Hurley v. United States,* 192 F.2d 297, 299 (4th Cir.1951); *Nordgren v. United States,* 181 F.2d 718, 720–21 (9th Cir.1950). *See also United States v. Raff,* 161 F.Supp. 276, 280 n. 3 (M.D.Pa.1958).

Several considerations dictate this construction of the statute. First, unless the phrases "officer and employee" and "any persons acting for or on behalf of the United States" are read in the disjunctive, the words "officer" and "employee" are superfluous. The Fourth Circuit correctly recognized this in *Hurley.*

To hold otherwise would be to make the words 'officer and employee' completely nugatory.

\*　　\*　　\*　　\*　　\*　　\*

If Congress had intended that an officer or employee must be acting in an official function to violate § 201, why were the words 'officer or employee' inserted in the statute? The term 'person acting for the United States in an official function' is broad enough to include officers and employees. We do not believe that Congress so intended, but rather a distinction was drawn between officers or employees on the one hand, and persons acting for the United States in an official function on the other. Statutes must be interpreted as to give meaning to every portion thereof.

*Hurley,* 192 F.2d at 300.

Second, this reading of the statute is more consistent with the legislative purpose of preventing the corruption of a federal official. *See Kemler v. United States,* 133 F.2d 235, 238 (1st Cir.1942). The potential for corruption occurs when bribes are offered to federal employees with the intent that the employees use their federal office or position in an unlawful manner. For persons who are not federal employees the potential for corruption is limited to when they are acting "for or on behalf of the United States ... in any official function."

Third, this distinction is recognized in § 201(a)'s limited legislative history:

The term "public official" [was] broadly defined to include officers and employees of the three branches of government, jurors *and other persons carrying on activities for or on behalf of the Government.* (emphasis added)

S.Rep. No. 2213, 87 Cong., 2d Sess. (1962) reprinted in [1962] U.S.Code Cong. & Ad. News 3852, 3856.

Fourth, § 201(b) clearly does not provide any limitation of "official function" with respect to a "person who has been selected to be a public official." Yet, such an individual has no authority to perform any official duties until actually appointed. It would be strange indeed that it is a crime to offer a bribe to one who has been selected for appointment but not a crime to offer the same bribe after appointment when the individual is actually an officer or employee of the government.

The dissent's construction of § 201(a) in effect adds an element to the crime through the statutory definition of public official; that is, that the bribed federal employee has the actual authority to achieve the object of the bribe. This is a position rejected by the Second, Seventh, Fourth, Fifth and District of Columbia Circuits which have all imposed § 201 liability on bribers who erroneously perceived that the duties of a public official would give that official the authority to accomplish the desired act. *United States v. Arroyo,* 581 F.2d 649 (7th Cir.), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 838, 59 L.Ed.2d 34 (1978) (201(c)); *United States v. Evans,* 572 F.2d 455, 480 (5th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978) (201(c)); *United States v. Anderson,* 509 F.2d 312, 332 (D.C.Cir. 1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975) (201(b)); *United States v. Hall,* 245 F.2d 338, 339 (2d Cir. 1957); *United States v. Troop,* 235 F.2d 123, 124–25 (7th Cir.1956) (201(b)); *Wilson v.*

*United States,* 230 F.2d 521 (4th Cir.), *cert. denied,* 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956); *Hurley,* 192 F.2d at 299 (4th Cir.); *United States v. Lubomski,* 277 F.Supp. 713 (N.D.Ill.1967).

The defendants contend that *Blunden v. United States,* 169 F.2d 991 (6th Cir.1948), a case decided prior to the 1962 amendments to § 201, is dispositive of this issue. While language in *Blunden* does in fact support the defendants' contentions, we are not persuaded that such language controls our construction of the *present* revision of § 201(b).

The 1948 revision of § 201(b) considered by the *Blunden* court made no clear distinctions between the alternative ways in which one could violate the statute. This and former versions of § 201, by consolidation of the operative and definitional provisions of the statute in a single sentence marked off only by commas, permitted confusion between the definitional and operative provisions.[6] This is manifested in the language used in earlier cases.

Neither the Supreme Court nor the Sixth Circuit has addressed § 201(b) since amendments to this statute were made in 1962. The amendments to the statute clarify that certain provisions appearing in former versions of the statute are definitional and others operative. The terms "public official," "person who has been selected to be a public official," and "official act" are clearly set forth in § 201(a) as definitional provisions. In addition, the operative provisions of § 201(b)(1), (2) and (3) are now clearly set forth as three alternative means by

**6.** From 1948 to 1962, 18 U.S.C. § 201 provided:

§ 201. Offer to officer or other person

Whoever promises, offers, or gives any money or thing of value or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses

thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years or both.

which the statute can be violated. Only one of these alternatives, subsection (1), requires by its terms that the bribery concern some "official act."

The defendants in *Blunden* were charged under the 1948 act with the parallel of the 1962 subsection (1) violation; that is, offering things of value to a known employee of the United States "with the intent to influence his decision or action in a matter or proceeding within ... his official capacity ...." 169 F.2d at 993. Blunden and others wished to purchase surplus motors from the Army. Flisek was the chief civilian clerk at the depot where the motors were stored. He had authority to move some motors at the depot to other posts or stations in the United States but no authority to ship surplus motors. However, he told defendants he would see that they got a preference over other buyers in the sale of the motors. Defendants agreed that Flisek would get an equal share of the profits from motors obtained through his efforts. He also arranged to secure forms and made out a false bill of lading. Later he had the transportation division of the depot ship and bill additional motors to defendants. The information charged defendants "with giving to Flisek, knowing him to be an employee of the United States of America, certain things of value with the intent to influence his decision or action in a matter or proceeding within the jurisdiction and control in his official capacity as [chief clerk]." *Id.* at 933. The Court held that since Flisek "lacked the authority and jurisdiction to act" in the sale of the motors the statute was not violated, even though Flisek's position gave him the opportunity to ship government property illegally. The *Blunden* Court noted that defendants could successfully have been charged under the same section—but were not—with the intent to influence Flisek to commit a fraud on the United States. That statement makes it clear the Court was not relying on any failure to meet the *public official* definition because of an "official function" limitation. Such a limitation on the definition of public official would have prevented prosecution for fraud as well.

The *Blunden* Court was, therefore, never faced with the issue of whether the federal employee involved was a "public official" as now defined in § 201(a). Indeed, such official status appears to have been assumed. Rather, the Court dismissed the charges because the government failed to prove the offense charged. Since the employee had not been bribed to act on a matter within his official capacity, the defendants' conviction for bribing a public official with intent to *influence an official decision* could not stand.

The defendants in the present case were not indicted for bribing a public official with intent "to influence an official act" within the public official's capacity. Instead, they were indicted for bribery to induce a public official to violate his lawful duties. There is simply no requirement here that the act induced fall within the federal employee's official function. *Blunden* does not hold otherwise.

Nor is *Birdsall v. United States,* 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914), also decided before the 1962 amendments, to § 201, contrary to our construction of the present statute. *Birdsall,* like *Blunden,* is also an "official act" case which would not now be brought under § 201(b)(1).

In *Birdsall,* the Supreme Court addressed whether gifts made to and received by officers in the Department of Indian Affairs, for the purpose of influencing reports and recommendations to federal judges with regard to sentences of persons convicted for violating the liquor laws, constituted bribery. The then effective version of § 201, with respect to the acceptance of bribes, provided that:

> [W]hoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government thereof, [accepts money] with the intent to have his decision or *action* on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought

before him in his official capacity, or in his place of trust or profit, influenced thereby, [shall be punished as stated]. (emphasis added)

*Birdsall,* 233 U.S. at 230, 34 S.Ct. at 514. Another provision, as to offering a bribe, used language similar to that quoted above in defining the official "action" of the recipient and the character of the action intended to be influenced. The bribe offering statute continued the intent requirement, as does the present version of § 201(b), with two additional types of criminal intent "[to i]nfluence him to commit ... any fraud ... on the United States or to induce him to do or omit to do any act in violation of his lawful duty." *Id.* at 230, 34 S.Ct. at 514. The indictments charged Birdsall with having given money to two officers in the Department of Indian Affairs with intent to influence their official "action," the first of the three types of criminal intent under the then effective version of § 201. The federal officers were charged with receiving money from Birdsall with the intent that their official "action" should thus be influenced. The Supreme Court in *Birdsall* clearly relied on the criminal intent alternative in what is now § 201(b)(1) with respect to Birdsall and § 201(c)(1) with respect to the two federal officers. It repeatedly referred to "action" in the body of the opinion. In addition, the indictment only charged the defendants with the "action" alternative of criminal intent. In the then effective version of § 201, "action" was not preceded by a qualifying term "official" as it is now. The present version of § 201(b)(1) and 201(c)(1) substitutes the term "official act." The Supreme Court in *Birdsall* read the then effective version of § 201 to require that "action" be qualified by the implied term "official." *Id.* at 230, 34 S.Ct. at 514 ("[E]very action that is within the range of official duty comes within the purview of these sections."), *Id.,* at 235, 34 S.Ct. at 516 ("in determining the scope of official action regard must be had to the authority conferred ..."). The Court went on to conclude that "official action" need not be proscribed by statute, but may include a requirement of the de-

partment for which the public official is acting and may be evidenced by establishing usage as well as written rules and regulations. *Id.* at 231, 34 S.Ct. at 514.

The Supreme Court's judicial qualification of "action" as "official action" was codified in subsequent versions of § 201 in the language "official act," and is presently found in § 201(b)(1), as defined in § 201(a) ("official act"). The end result of *Birdsall* was that the Court held that the reports and recommendations made by the federal officers were "official actions," within the meaning of the first of the alternative intent provisions of the then effective § 201, even though the reports and recommendations were not required by statute. *Id.,* at 229, 34 S.Ct. at 514. *Birdsall,* therefore, did not resolve the question of statutory construction presented in the instant case and is not controlling.

B. The requirement of a promise, gift or offer of something of value to a public official

The indictment alleged that defendants gave $100,000 to Van Hengel. This second requirement is clearly satisfied and is not an issue in this case.

C. Intent to induce the public official to act in violation of his lawful duty

The third requirement for a § 201(b)(3) violation is that the briber have the intent to induce the public official to act in violation of his lawful duty.

1. *Intent:* Van Hengel was approached by the defendants because he was a government employee and because they erroneously perceived that he had the power to effect the release of Zeff Lulgjuraj from state prison as a result of that status. Although erroneous, defendants' beliefs satisfy the intent requirement of § 201(b)(3). This provision encompasses both an intent to induce acts which are part of a public official's lawful duties and those acts which are erroneously perceived by the briber to be part of the public official's lawful duties.

In *Blunden* this Court held that a § 201(b) violation may not be found where the bribed public official has no actual authority to compel the desired result. The defendants urge that this holding construes § 201(b)(3) to require that the bribe giver's intent to corrupt be based on a correct perception of the public official's authority. We disagree. As discussed in the previous section of this opinion, the only consideration before the *Blunden* court was whether the defendants had, under what would now be § 201(b)(1), corrupted a public official in the performance of an *official act*.[7] The Sixth Circuit retreated from any contrary implication drawn from the holding of *Blunden* in a subsequent opinion written by *Blunden's* author.

In *Krogmann v. United States*, 225 F.2d 220, 225 (6th Cir.1955) the Court held that § 201 was applicable where the advice and recommendation of a public official would be influential even though the public official did not have the authority to make the final decision. Indeed, *Krogmann* explicitly recognized that it was the intent of the briber which was controlling. The defendant in *Krogmann* claimed that there was insufficient evidence to establish that the defendant public official had authority over the property which was to be sold as surplus. After reviewing the evidence, the Court explained that the *briber's intent to corrupt* and not achievement of the desired result was the controlling consideration:

> In addition, the offense charged was complete upon the payment of the money to [the bribee] with the intent to influence his action with respect to the sale of surplus property. The evidence was sufficient to show that appellants were interested in the surplus property at Oak Ridge and made the payments for the purpose of influencing [the bribee's] ac-

tion with respect to such property. Whether the attempt was successful or what the officer did in attempting to perform his side of the bargain are accordingly immaterial. *Wolf v. United States*, 6 Cir., 292 F. 673, 675; *Curtis v. State*, 113 Ohio St. 187, 191, 148 N.E. 834; Underhill on Criminal Evidence, 4th Edition, Sec. 715.

In light of *Krogmann*, the absence of any reasoned analysis on the issue in *Blunden* and the 1962 amendments to the statute, we believe we are free to consider this issue now.

Congress enacted § 201(b) to provide a broad deterrent against attempted corruption of public officials by means of bribes. The focus of this section is upon the briber's intent to corrupt, not upon prevention, per se, of the briber's ultimate ends, or upon the bribed individual's ability to effect a result. Because the briber's intent is controlling, it is irrelevant whether that intent was correctly formulated. To limit § 201(b)(3) in the manner suggested by the defendants would excuse bribers of public officials who fully intended to gain an advantage by making a corrupt offer to a public official but were mistaken in their impression of what the public official could lawfully do.[8] The deterrent value of punishing the bad intent of bribers is the same regardless of whether or not the acts to be accomplished are within the scope of the actual lawful duties of the bribed public official and regardless of whether the briber has correctly perceived the precise scope of the official's lawful duties.

For these reasons we choose to follow the reasoning of the Second, Seventh, Fourth, Fifth and District of Columbia Circuits, all of which have imposed § 201 liability on bribers who erroneously perceived that the bribed public official had the authority to

---

**7.** Indeed, the author of *Blunden* apparently considered that the facts before the Court presented a simple case of theft of government property—an act manifestly beyond a public official's authority to perform. *See Krogmann v. United States*, 225 F.2d 220, 225 (6th Cir. 1955).

**8.** This does not mean that every inducement given to a public employee to perform some illegal act will necessarily constitute bribery under § 201(b)(3). To the contrary, the briber must still have *intended* that the federal employee *utilize that employee status* to accomplish the illegal goal. It is here that the evil of potential corruption of public officials occurs.

accomplish the desired act. *United States v. Arroyo,* 581 F.2d 649 (7th Cir.), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 838, 59 L.Ed.2d 34 (1978) (201(c)); *United States v. Evans,* 572 F.2d 455, 480 (5th Cir.), *cert. denied,* 438 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978) (201(c)); *United States v. Anderson,* 509 F.2d 312, 332 (D.C.Cir. 1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975) (201(b)); *United States v. Hall,* 245 F.2d 338, 338–339 (2d Cir.1957); *United States v. Troop,* 235 F.2d 123, 124–25 (7th Cir.1956) (201(b)); *Wilson v. United States,* 230 F.2d 521 (4th Cir.), *cert. denied,* 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956); *Hurley, supra,* (4th Cir.); *United States v. Lubomski,* 277 F.Supp. 713 (N.D.Ill.1967).

2. *Lawful duties:* Van Hengel was given $100,000 by defendants to effect the escape of Zeff Lulgjuraj from state prison, an act that would constitute a violation of Mich.Comp.Laws Ann. § 750.1.

In *Birdsall v. United States,* 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914), the Supreme Court stated that lawful duties and official acts extend beyond those imposed by statute to include duties and acts imposed by written rules and regulations. *Id.* at 231, 34 S.Ct. at 514.

The violation of this Michigan criminal law by Van Hengel would constitute a violation of his lawful duties not to engage in criminal conduct, 31 C.F.R. §§ 0.735–56, 0.735–30(f), and to uphold the laws of all governments within the United States, 28 C.F.R. § 45–735 (Appendix—Code of Ethics for Government Service, ¶ 2). The regulations authorize disciplinary sanctions against employees who violate them—sanctions which affect their employment.

The indictment in this case satisfied all of the requirements imposed by the plain language of the present version of § 201(b)(3).

## II. Supervisory Powers and Due Process Violation:

All these defendants assert that their convictions should be barred under due process principles or in the exercise of this Court's supervisory powers because of the nature and extent of the involvement of the government in the bribe scheme.[9]

In particular, defendants urge that the conduct of the Assistant United States Attorney in deceiving the United States District Judge and the ATF agents in impersonating a United States Marshal before Michigan prison authorities as well as certain remarks of the prosecutor before the grand jury were so outrageous as to require reversal.

This Court's inherent power to supervise the administration of criminal justice, *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 612, 87 L.Ed. 819 (1943), permits it to "formulate procedural rules not specifically required by the Constitution or by Congress." *United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983). The exercise of such supervisory powers serves three basic purposes.

[1] [T]o implement a remedy for violation of recognized rights, *McNabb, supra,* 318 U.S. at 340, 63 S.Ct. at 612; *Rea v. United States,* 350 U.S. 214, 217, 76 S.Ct. 292, 294, 100 L.Ed. 233 (1956);

[2] To preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *McNabb, supra,* 318 U.S. at 345, 63 S.Ct. at 615; *Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960);

[3] And finally, as a remedy designed to deter illegal conduct, *United States v. Payner,* 447 U.S. 727, 735–36 n. 8, 100 S.Ct. 2439, 2446 n. 8, 65 L.Ed.2d 468 (1980).

*Id.* at ——, 103 S.Ct. at 1978. Accordingly, the federal court's supervisory powers include the authority to remedy and deter

---

**9.** While defendants Gjieli and Nickola Lulgjuraj asserted entrapment defenses at trial, Zeff Lulgjuraj did not for apparent tactical reasons.

The jury's rejection of these defenses is not in issue.

serious misconduct by the government in the investigation and prosecution of a criminal defendant.[10] Reversals of convictions under a court's supervisory power, however, must be approached "with some caution." *United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980).

In *Hasting* and *Payner,* the Court reviewed attempts by lower courts to exclude evidence and reverse convictions using supervisory powers. On both occasions the Court held that the courts of appeals should not have reversed the conviction. In *Payner,* key evidence against defendant was seized by the government in an illegal search of a third person's briefcase. Government agents broke into a locked briefcase and stole records. Defendant urged that although the illegal search did not violate his personal fourth amendment rights, the Federal District Court was required to exercise its supervisory powers to suppress the evidence against him which was tainted by the theft of the records in order to deter similar misconduct in the future and prevent the judicial system from tacitly acquiescing in such behavior. The Supreme Court disagreed finding the use of supervisory powers unauthorized where the illegal conduct did not violate the defendant's personal constitutional rights. *Payner,* 447 U.S. at 734–35 n. 7, 736 n. 8, 100 S.Ct. at 2445 n. 7, 2446 n. 8. *See also, Id.,* at 737 n. 9, 100 S.Ct. at 2447 n. 9. In *Hasting,* the Seventh Circuit had held that the prosecutor violated defendants' fifth amendment right to remain silent when in summation he commented on their failure to submit a defense. The Supreme Court rejected the use of supervisory powers to set aside the convictions (and remand for retrial). Reversal of otherwise valid convictions, the Court reasoned, was an improper method of punishing the prosecutor or deterring further misconduct. The *Hasting* Court found overwhelming evidence of guilt and concluded that any error occa-

sioned by the prosecutor's argument was harmless.

The *Hasting* Court supplied guidelines for the future use of supervisory powers to reverse a conviction.

Supervisory power to reverse a conviction is not needed as a remedy when the error to which it is addressed is harmless since by definition, the conviction would have been obtained notwithstanding the asserted error. Further, in this context, the integrity of the process carries less weight, for it is the essence of the harmless error doctrine that a judgment may stand only when there is no 'reasonable possibility that the [practice] complained of might have contributed to the conviction.' *Fahy v. Connecticut,* 375 U.S. 85, 86–87 [84 S.Ct. 229, 230, 11 L.Ed.2d 171] (1963). Finally, deterrence is an inappropriate basis for reversal where, as here, the prosecutor's remark is at most an attenuated violation of Griffin, and where means more narrowly tailored to deter objectionable prosecutorial conduct are available.

*Hasting,* —— U.S. at ——, 103 S.Ct. at 1978.

The *Hasting* Court emphasized that supervisory powers should be utilized only where more narrowly tailored means for remedying the violation and deterring future conduct would prove sufficient. Examples given by the *Hasting* Court included directing the wrongdoer to show cause why he should not be disciplined, asking the Department of Justice to initiate disciplinary proceedings against a prosecutor if he or she was the offender, or publically chastising the wrongdoer by identifying him or her in the Court's opinion. *Hasting,* —— U.S. at —— n. 5, 103 S.Ct. at 1979 n. 5.

■ Prerequisite then to reversing a conviction under the supervisory powers, (1) there must be a constitutional injury which is personal to the complaining defendant, (2) the injury must "harm" the defendant in

---

**10.** The supervisory powers of a court are separate and distinct from alternative sanctions such as a perjury prosecution, administrative discipline, contempt or a civil suit. *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Cortina,* 630 F.2d 1207, 1210 (7th Cir.1980).

a legally significant way, (3) there must be an injury to the judicial system, (4) the "remedy" selected by the Court to preserve judicial integrity and deter future misconduct may not exceed established limitations on the court's power, and (5) the remedy selected must be narrowly tailored.

■ Mindful of the Court's admonitions in *Hasting* and *Payner* we decline to reverse the defendants' convictions. None of the governmental activity with respect to the writ of habeas corpus incident violated any protected right of the defendants. *Payner,* 447 U.S. at 737, n. 9, 100 S.Ct. at 2447, n. 9. Although the prosecutor's actions in obtaining the bogus writ constituted a fraud on the federal judicial system, that fraud, if it did not entrap Zeff Lulgjuraj, was in its effect on defendants' convictions harmless beyond a reasonable doubt. Zeff Lulgjuraj testified at trial, and at no time did he assert entrapment. Although the other defendants did claim entrapment they were not directly involved in the improper removal of Zeff Lulgjuraj from a prison.

The most serious misconduct here was that of the prosecutor. The ATF agent who posed as a marshal was doing so under the prosecutor's aegis. His future conduct may be deterred by use of all of the sanctions given as examples by the Supreme Court in *Hasting.* Indeed, the District Court held a hearing on why he should not be held in contempt. It concluded that the prosecutor understood what he had done was wrong, that there were mitigating circumstances and that if the District Judge who had been deceived would accept an apology for the misconduct, no further action would be taken. Although we might well have imposed a harsher sanction we do not believe the District Court abused its discretion.[11]

Accordingly, the judgments of conviction are affirmed.

LIVELY, Circuit Judge, dissenting.

I respectfully dissent. As I view the case the question presented is whether it is a federal offense to offer or pay a bribe to an officer of the United States for the performance of an act which would violate the laws of a state, but which would violate no law of the United States, and which is totally unrelated to the officer's official duties.

There is no doubt that the defendants engaged in unlawful activity. However, they were indicted and tried for the specific offense of violating 18 U.S.C. § 201(b)(3) (1976). Unlike the majority I see nothing in the language or history of the federal bribery statute of which § 201(b)(3) is a part to indicate that Congress ever intended to make it a federal offense to offer or pay a bribe to a person who happens to be an employee of the United States to violate a state law by actions which have no conceivable relation to the bribee's official duties. I read the 1962 Act as nothing more than a collation and recodification of earlier bribery acts into a single section of Title 18. It made no substantive changes to the provisions now found in § 201(b)(3). I am not convinced that the understanding of the briber rather than the range of official duties of the person bribed determines the applicability of the federal statute.

A.

A federal bribery statute enacted as section 5451 of the Revised Statutes of 1878 provided:

Sec. 5451. Every person who promises, offers, or gives, or causes or procures to be promised, offered, or given, any money or other thing of value, or makes or tenders any contract, undertaking, obli-

11. In exercising its decision-making functions a court must rely on the representation made to it by the attorneys that come before it. Because many of the matters presented by assistant United States attorneys are presented ex parte (writs of habeas corpus ad testificandum, search warrants, wire tap orders, etc.) it is especially important that the court be able to rely on their statements. Deliberate misrepresentations such as those made by the Assistant United States Attorney to the District Judge who issued the writ attack the very core of the judicial system and cannot be condoned.

gation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, to any officer of the United States, or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the government thereof, or to any officer or person acting for or on behalf of either house of congress, or of any committee of either house, or both houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit, or aid in committing, or to collude in or allow, any fraud, or make opportunity for the commission of any fraud on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be punished as prescribed in the preceding section.

As codified in the Criminal Code of 1909 the bribery statute was contained in sections 117 and 39 which are similar to present-day 18 U.S.C. § 201(c)(1) and § 201(b) respectively. In 1948 the bribery statute, along with all other criminal laws, was placed in Title 18. From 1948 to 1962, 18 U.S.C. § 201 provided:

§ 201. Offer to officer or other person.

Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or

which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both.

In 1962 Congress cast § 201 in its current form as part of the Bribery, Graft and Conflicts of Interest Act. In the 1962 Act § 201(b) contains the same elements found in the 1878 statute and the 1909 and 1948 codifications, with only minor changes. The legislative history of the 1962 Act reflects primarily the concern of Congress with redefining conflicts of interest of federal officials. However, the Senate Report on the bill which became the 1962 Act, H.R. 8140, states the purpose of that part of the Act dealing with bribery. After discussing the conflicts of interest portions of the Act, the report continues:

A secondary feature of the bill is the substitution of a single comprehensive section of the Criminal Code for a number of existing statutes concerned with bribery. This consolidation would make no significant changes of substance and, more particularly, would not restrict the broad scope of the present bribery statutes as construed by the courts.

S.Rep. No. 2213, 87th Cong., 2d Sess., *reprinted in* [1962] U.S.Code Cong. & Ad. News 3852, 3853. In discussing § 201 in the section-by-section analysis the report summarizes § 201(b) as follows:

Subsection (b) makes it unlawful for anyone to bribe or attempt to bribe a public official by corruptly giving, offering, or promising him or any person selected by him, anything of value with intent to influence any official act by him, to influence him to commit or allow any fraud on the United States, or to induce him to do or omit to do any act in

violation of his lawful duty. The three alternate intents specified in the subsection are in substance the same as those now prescribed in title 18, United States Code, section 201. The subsection expands present law to a degree in its provisions forbidding an offer or promise of something of value from which a public official himself will not benefit but which will be of advantage to another person in whose well-being he is interested.

*Id.* at 3856–57.

### B.

What is now 18 U.S.C. § 201(b) has remained virtually unchanged since 1878. The codifications and amendments have not altered the substance of the federal offense of bribery. The present law is intended to have the broad scope of earlier bribery statutes "as construed by the courts."

The 1878 bribery statute was construed in *United States v. Gibson,* 47 F. 833 (N.D.Ill. 1891). The defendant in that case was charged with offering an internal revenue officer money to set fire to a distillery. The officer was entitled to enter the distillery at any time it was open for the purpose of seeing that proper revenue stamps were affixed to all receptacles containing alcoholic spirits. However, he had no other duties with respect to the distillery. The district court quashed the indictment upon finding that "to bribe or induce such an officer to do an act not connected with his line of duty impinges upon no United States law, and does not subject the offender to indictment and punishment in the United States courts." *Id.* at 834. While the revenue officer's right to enter the distillery made him a convenient person to attempt to employ for the purpose of destroying the distillery, this fact did not bring the offer within the federal bribery statute. The court concluded its opinion:

The bribe offered was for an act entirely outside the official function of the officer to whom, it is claimed, the bribe was offered. The right to enter the distillery was not given him that he might do this, but that he might enter there for the purpose of merely inspecting the articles in the distillery, and hence the act which it was sought to have him accomplish by the inducement offered was in no respect within the duty of this officer. The alleged offers cannot be said to have been made to induce the officer to do or omit to do any act in violation of his lawful duty. It will, of course, be understood that this motion is disposed of solely on the ground that the offense charged was not within the jurisdiction of this court, but is wholly within the cognizance of the state courts.

The motion to quash is sustained.

*Id.* at 835.

A similar conclusion was reached in *In re Yee Gee,* 83 F. 145 (D.Wash.1897), where the defendant solicited a government employee to give false translations of Chinese letters and documents which the defendant anticipated would be offered in evidence in a pending criminal case. The interpreter had not been appointed or designated to make the translations, though his duties were to assist customs officers in interpreting and translating from Chinese to English and from English to Chinese. The district court found that it was not a function of his position to make translations in court proceedings and in the absence of a specific appointment to do so, any such activity on his part would not be performed in his official capacity.

The Supreme Court dealt with the bribery provisions of the Criminal Code of 1909 in *United States v. Birdsall,* 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914). The court described the substance of the two sections as follows:

Section 117 of the Criminal Code (35 Stat. p. 1109), with respect to the acceptance of bribes, provides that "whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof" accepts money, etc., "with intent to have his decision or action on any question, matter, cause, or proceeding

which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby" shall be punished as stated. Section 39 (*id.* p. 1096), as to bribe giving, uses similar language in defining the official relation of the recipient and the character of the action intended to be influenced; adding the words—"with intent to influence him to commit ... any fraud ... on the United States, or to induce him to do or omit to do any act in violation of his lawful duty."

*Id.* at 230, 34 S.Ct. at 514. Section 39, referred to in the quoted passage, was substantively identical to § 5451 of the 1878 statute.

It seems clear that the Supreme Court related the final clause of § 39, "or to induce him to do or omit to do any act in violation of his lawful duty," to the requirement that the bribe be offered "with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit ...." The final clause did not refer to an act or omission in violation of his general duty to uphold the law, but to his official duties. The Court wrote, "Every action that is within the range of official duty comes within the purview of these sections." *Id.* Only when it is charged that the action sought to be influenced is official action is there a basis for prosecution under the federal bribery statute. The Court explained that official action need not be prescribed by statute, but may be a requirement of the department for which the officer is acting and may be evidenced by established usage as well as written rules. *Id.* at 231, 34 S.Ct. at 514.

This court dealt with 18 U.S.C. § 201 under the 1948 Criminal Code in *Blunden v. United States,* 169 F.2d 991 (6th Cir.1948). As has been pointed out, there is no material difference between the final clause of § 201 (1948) and the present § 201(b)(3). In *Blunden* the defendants thought the per-

son to whom they paid money had the authority to release surplus government property to them. In fact, that person, an Army civilian employee, had no control over surplus property, although he had misrepresented his authority to the defendants. Under these circumstances the court found there was no bribery under § 201, though the defendants clearly intended to corrupt a federal employee. The language now found in § 201(b)(3) was not discussed. The court cited two previous Sixth Circuit cases "which ... held that in order for the offense to exist under the statute it was necessary that the person offering the bribe believe that the employee had the necessary authority and also that the employee possess the actual authority to act or assist in the matter." 169 F.2d at 994. The court then stated:

> The crux of the offense is the intent to influence an *official* decision. The statute requires that the employee be acting for the Government in an "official function" and that the matter in which his decision is to be influenced be "before him in his official capacity."

*Id.* (Emphasis in original). In a subsequent § 201 case this court distinguished *Blunden* but did not depart in any respect from its holding. *See Krogmann v. United States,* 225 F.2d 220 (6th Cir.1955).

*Blunden* has been criticized as being too restrictive in interpreting § 201. *See, e.g., Hurley v. United States,* 192 F.2d 297, 300 (4th Cir.1951). *See also Schneider v. United States,* 192 F.2d 498 (9th Cir.1951), *cert. denied,* 343 U.S. 914, 72 S.Ct. 646, 96 L.Ed. 1329 (1952), where the result would have been different if the *Blunden* requirement respecting the authority of the bribery target had been strictly followed. Nevertheless, in each of these cases the bribe was paid to influence a decision or obtain action which violated a duty owed to the United States as employer of the target of the bribe. In *Hurley v. United States, supra,* the defendant paid money to an Air Force sergeant attached to an induction center to prevent the defendant's induction into the armed forces. The sergeant to whom the bribe was paid had no authority to prevent

an induction legally, though he could do it illegally. The court concluded that the act sought by the briber need not be within the actual authority of the person bribed. Nevertheless, the lawful duty of the sergeant which the defendant wanted him to breach was his official duty to the government of which he was an officer, not to some other entity. Though not within his authority, the illegal act, if performed, would have been injurious to the United States.

In *Schneider v. United States, supra,* the defendant paid an Army air base salvage officer to substitute other salvage material for the scrap which he had purchased. The court stated that if any base salvage officer "should fail to prevent or to report an unauthorized removal of government property from the base knowing that such a removal was contrary to law he would fail in his lawful duty. This would be true whether or not he possessed specific authority to sell the property." 192 F.2d at 501 (citation omitted). Since the officer's official duties required him to protect government property, the bribe was offered to cause him to fail to do his duty as base salvage officer. Thus, the court took a broader view of the "authority to act" requirement of § 201 than this court did in *Blunden.* However, the *Schneider* court did not depart from the requirement that the bribe relate to an official function of the target of the bribe:

> The statute itself and the cases construing it or its predecessor make it clear that no violation of the law can take place unless the individual bribed or attempted to be bribed is an officer or employee or person acting for or on behalf of the United States or a department or agency thereof, *and that the bribe or the offer is in connection with his line of duty.* The duties of him to whom the offer is made or the bribe given are most pertinent.

*Id.* at 500 (footnote omitted) (emphasis added). I agree with the holding in *Schneider.* The requirement of *United States v. Blunden* that the act sought by the briber be within the actual authority of the person bribed does not apply where the defendant

is charged specifically with violating § 201(b)(3). However, in all § 201(b)(3) prosecutions the act sought by the briber must be a violation of some official duty of the person bribed. The act sought must be "within the range of official duty" of the person bribed. *Birdsall, supra,* 233 U.S. at 230, 34 S.Ct. at 514.

## C.

After careful consideration I conclude that the actions of the defendants in the present case did not constitute a violation of 18 U.S.C. § 201(b)(3). Van Hengel had no official duties with respect to Michigan state prisons or their inmates. The fact that the defendants, or at least Gjieli, thought he might have some influence with state prison authorities is immaterial. The bribe must be offered or paid to induce action which violates the lawful duty of the offeree or payee. "Every action *that is within the range of official duty* comes within the purview of these sections." *Birdsall, supra,* 233 U.S. at 230, 34 S.Ct. at 514 (emphasis added). Neither preventing the escape nor obtaining the release of inmates from Jackson State Prison was within the range of Van Hengel's official duty. The fact that Van Hengel is an ATF agent under a general duty to refrain from criminal and dishonest acts and to uphold the laws of the land is not enough. He was not paid to do or omit to do any act related to his official duties.

The decision to prosecute the defendants under the federal bribery statute is puzzling in view of the fact that the Michigan State Police were involved in the investigation from the beginning. The endeavor to free Lulgjuraj would have violated Michigan law as set forth in M.C.L.A. § 750.183, "Aiding escape of and rescuing prisoners":

> Any person who ... shall by any means whatever, aid or assist any ... prisoner in his endeavor to make his escape [from any jail, prison or like place of confinement], whether such escape be affected (sic) or attempted, or not ... shall be guilty of a felony, punishable by impris-

onment in the state prison not more than 7 years ...

The State of Michigan has a strong interest in prosecuting anyone who would seek to effect the unlawful release of a person convicted of capital crimes. If the information in this case had been turned over to a Michigan prosecutor I have no doubt that the matter would have been pursued vigorously.

The district court should have granted the defendants' motion for acquittal.